THOMPSON *v.* CITY OF LOUISVILLE ET AL.

No. 59.   Argued January 11–12, 1960.—Decided March 21, 1960.

*Louis Lusky* argued the cause for petitioner. With him on the brief were *Marvin H. Morse, Harold Leventhal* and *Eugene Gressman.*

*Herman E. Frick* argued the cause for respondents. With him on the brief were *Jo M. Ferguson,* Attorney General of Kentucky, *David B. Sebree,* Assistant Attorney General, and *William E. Berry.*

MR. JUSTICE BLACK delivered the opinion of the Court.

Petitioner was found guilty in the Police Court of Louisville, Kentucky, of two offenses—loitering and disorderly conduct. The ultimate question presented to us is whether the charges against petitioner were so totally devoid of evidentiary support as to render his conviction unconstitutional under the Due Process Clause of the Fourteenth Amendment. Decision of this question turns not on the sufficiency of the evidence, but on whether this conviction rests upon any evidence at all.

The facts as shown by the record are short and simple. Petitioner, a long-time resident of the Louisville area, went into the Liberty End Cafe about 6:20 on Saturday evening, January 24, 1959. In addition to selling food the cafe was licensed to sell beer to the public and

some 12 to 30 patrons were present during the time petitioner was there.  When petitioner had been in the cafe about half an hour, two Louisville police officers came in on a "routine check."  Upon seeing petitioner "out there on the floor dancing by himself," one of the officers, according to his testimony, went up to the manager who was sitting on a stool nearby and asked him how long petitioner had been in there and if he had bought anything.  The officer testified that upon being told by the manager that petitioner had been there "a little over a half-hour and that he had not bought anything," he accosted Thompson and "asked him what was his reason for being in there and he said he was waiting on a bus."  The officer then informed petitioner that he was under arrest and took him outside.  This was the arrest for loitering.  After going outside, the officer testified, petitioner "was very argumentative—he argued with us back and forth and so then we placed a disorderly conduct charge on him."  Admittedly the disorderly conduct conviction rests solely on this one sentence description of petitioner's conduct after he left the cafe.

The foregoing evidence includes all that the city offered against him, except a record purportedly showing a total of 54 previous arrests of petitioner.  Before putting on his defense, petitioner moved for a dismissal of the charges against him on the ground that a judgment of conviction on this record would deprive him of property and liberty [1] without due process of law under the Fourteenth Amendment in that (1) there was no evidence to support findings of guilt and (2) the two arrests and prosecutions were reprisals against him because petitioner had employed counsel and demanded a judicial hearing to

---

[1] Upon conviction and sentence under §§ 85–8, 85–12 and 85–13 of the ordinances of the City of Louisville, petitioner would be subject to imprisonment, fine or confinement in the workhouse upon default of payment of a fine.

defend himself against prior and allegedly baseless charges by the police.[2]   This motion was denied.

Petitioner then put in evidence on his own behalf, none of which in any way strengthened the city's case.   He testified that he bought, and one of the cafe employees served him, a dish of macaroni and a glass of beer and that he remained in the cafe waiting for a bus to go home.[3] Further evidence showed without dispute that at the time of his arrest petitioner gave the officers his home address; that he had money with him, and a bus schedule showing that a bus to his home would stop within half a block of the cafe at about 7:30; that he owned two unimproved lots of land; that in addition to work he had done for others, he had regularly worked one day or more a week for the same family for 30 years; that he paid no rent in the home where he lived and that his meager income was sufficient to meet his needs.   The cafe manager testified that petitioner had frequently patronized the cafe, and that he had never told petitioner that he was unwelcome there.   The manager further testified that on this very occasion he saw petitioner "standing there in the middle

---

[2] Petitioner added that the effect of convictions here would be to deny him redress for the prior alleged arbitrary and unlawful arrests.   This was based on the fact that, under Kentucky law, conviction bars suits for malicious prosecution and even for false imprisonment.   Thus, petitioner says, he is subject to arbitrary and continued arrests neither reviewable by regular appellate procedures nor subject to challenge in independent civil actions.

[3] The officer's previous testimony that petitioner had bought no food or drink is seriously undermined, if not contradicted, by the manager's testimony at trial.   There the manager stated that the officer "asked me I had [sic] sold him any thing to eat and I said no and he said any beer and I said no . . . ."   (Emphasis supplied.) And the manager acknowledged that petitioner might have bought something and been served by a waiter or waitress without the manager noticing it.   Whether there was a purchase or not, however, is of no significance to the issue here.

of the floor and patting his foot," and that he did not at any time during petitioner's stay there object to anything he was doing. There is no evidence that anyone else in the cafe objected to petitioner's shuffling his feet in rhythm with the music of the jukebox or that his conduct was boisterous or offensive to anyone present. At the close of his evidence, petitioner repeated his motion for dismissal of the charges on the ground that a conviction on the foregoing evidence would deprive him of liberty and property without due process under the Fourteenth Amendment. The court denied the motion, convicted him of both offenses, and fined him $10 on each charge. A motion for new trial, on the same grounds, also was denied, which exhausted petitioner's remedies in the police court.

Since police court fines of less than $20 on a single charge are not appealable or otherwise reviewable in any other Kentucky court,[4] petitioner asked the police court to stay the judgments so that he might have an opportunity to apply for certiorari to this Court (before his case became moot)[5] to review the due process contentions he raised. The police court suspended judgment for 24 hours during which time petitioner sought a longer stay from the Kentucky Circuit Court. That court, after examining the police court's judgments and transcript, granted a stay concluding that "there appears to be merit" in the contention that "there is no evidence upon which

---

[4] Ky. Rev. Stat. § 26.080; and see § 26.010. Both the Jefferson Circuit Court and the Kentucky Court of Appeals held that further review either by direct appeal or by collateral proceeding was foreclosed to petitioner. *Thompson* v. *Taustine*, No. 40175, Jefferson (Kentucky) Circuit Court, Common Pleas Branch, Fifth Division (per Grauman, J.) (1959), unreported; *Taustine* v. *Thompson*, 322 S. W. 2d 100 (Ky. 1959).

[5] Without a stay and bail pending application for review petitioner would have served out his fines in prison in 10 days at the rate of $2 a day. *Taustine* v. *Thompson*, 322 S. W. 2d 100 (Ky. 1959).

conviction and sentence by the Police Court could be based" and that petitioner's "Federal Constitutional claims are substantial and not frivolous." [6] On appeal by the city, the Kentucky Court of Appeals held that the Circuit Court lacked the power to grant the stay it did, but nevertheless went on to take the extraordinary step of granting its own stay, even though petitioner had made no original application to that court for such a stay.[7] Explaining its reason, the Court of Appeals took occasion to agree with the Circuit Court that petitioner's "federal constitutional claims are substantial and not frivolous." [8] The Court of Appeals then went on to say that petitioner

> "appears to have a real question as to whether he has been denied due process under the Fourteenth Amendment of the Federal Constitution, yet this substantive right cannot be tested unless we grant him a stay of execution because his fines are not appealable and will be satisfied by being served in jail before he can prepare and file his petition for certiorari. Appellee's substantive right of due process is of no avail to him unless this court grants him the ancillary right whereby he may test same in the Supreme Court." [9]

Our examination of the record presented in the petition for certiorari convinced us that although the fines here are small, the due process questions presented are substantial and we therefore granted certiorari to review the police court's judgments. 360 U. S. 916. Compare *Yick Wo* v. *Hopkins,* 118 U. S. 356 (San Francisco Police Judges

---

[6] *Thompson* v. *Taustine,* No. 40175, Jefferson (Kentucky) Circuit Court, Common Pleas Branch, Fifth Division (per Grauman, J.) (1959), unreported.

[7] *Taustine* v. *Thompson,* 322 S. W. 2d 100 (Ky. 1959).

[8] *Id.,* at 101.

[9] *Id.,* at 102.

Court judgment imposing a $10 fine, upheld by state appellate court, held invalid as in contravention of the Fourteenth Amendment).

The city correctly assumes here that if there is no support for these convictions in the record they are void as denials of due process.[10]   The pertinent portion of the city ordinance under which petitioner was convicted of loitering reads as follows:

> "It shall be unlawful for any person . . . , without visible means of support, or who cannot give a satisfactory account of himself, . . . to sleep, lie, loaf, or trespass in or about any premises, building, or other structure in the City of Louisville, without first having obtained the consent of the owner or controller of said premises, structure, or building; . . ."   § 85–12, Ordinances of the City of Louisville.[11]

In addition to the fact that petitioner proved he had "visible means of support," the prosecutor at trial said "This is a loitering charge here.   There is no charge of no visible means of support."   Moreover, there is no suggestion that petitioner was sleeping, lying or trespassing in or about this cafe.   Accordingly he could only have been convicted for being unable to give a satisfactory account of himself while loitering in the cafe, without the consent of the manager.   Under the words of the ordinance itself, if the evidence fails to prove all three elements of this loitering charge, the conviction is not supported by evidence, in which event it does not comport with due process of law.   The record is entirely lacking in evidence to support any of the charges.

---

[10] For illustration, the city's brief in this Court states that the questions presented are "1. Whether the evidence was sufficient to support the convictions, and therefore meets the requirements of the due process clause of the Fourteenth Amendment. . . ."

[11] Section 85–13 provides penalties for violation of § 85–12.

Here, petitioner spent about half an hour on a Saturday evening in January in a public cafe which sold food and beer to the public. When asked to account for his presence there, he said he was waiting for a bus. The city concedes that there is no law making it an offense for a person in such a cafe to "dance," "shuffle" or "pat" his feet in time to music. The undisputed testimony of the manager, who did not know whether petitioner had bought macaroni and beer or not but who did see the patting, shuffling or dancing, was that petitioner was welcome there. The manager testified that he did not at any time during petitioner's stay in the cafe object to anything petitioner was doing and that he never saw petitioner do anything that would cause any objection. Surely this is implied consent, which the city admitted in oral argument satisfies the ordinance. The arresting officer admitted that there was nothing in any way "vulgar" about what he called petitioner's "ordinary dance," whatever relevance, if any, vulgarity might have to a charge of loitering. There simply is no semblance of evidence from which any person could reasonably infer that petitioner could not give a satisfactory account of himself or that he was loitering or loafing there (in the ordinary sense of the words) without "the consent of the owner or controller" of the cafe.

Petitioner's conviction for disorderly conduct was under § 85–8 of the city ordinance which, without definition, provides that "[w]hoever shall be found guilty of disorderly conduct in the City of Louisville shall be fined . . . ." etc. The only evidence of "disorderly conduct" was the single statement of the policeman that after petitioner was arrested and taken out of the cafe he was very argumentative. There is no testimony that petitioner raised his voice, used offensive language, resisted the officers or engaged in any conduct of any kind likely in any way to adversely affect the good order and tranquillity of the

City of Louisville. The only information the record contains on what the petitioner was "argumentative" about is his statement that he asked the officers "what they arrested me for." We assume, for we are justified in assuming, that merely "arguing" with a policeman is not, because it could not be, "disorderly conduct" as a matter of the substantive law of Kentucky. See *Lanzetta* v. *New Jersey*, 306 U. S. 451. Moreover, Kentucky law itself seems to provide that if a man wrongfully arrested fails to object to the arresting officer, he waives any right to complain later that the arrest was unlawful. *Nickell* v. *Commonwealth*, 285 S. W. 2d 495, 496.

Thus we find no evidence whatever in the record to support these convictions. Just as "Conviction upon a charge not made would be sheer denial of due process," [12] so is it a violation of due process to convict and punish a man without evidence of his guilt.[13]

The judgments are reversed and the cause is remanded to the Police Court of the City of Louisville for proceedings not inconsistent with this opinion.

*Reversed and remanded.*

---

[12] *De Jonge* v. *Oregon*, 299 U. S. 353, 362. See also *Cole* v. *Arkansas*, 333 U. S. 196, 201.

[13] See *Schware* v. *Board of Bar Examiners*, 353 U. S. 232; *United States ex rel. Vajtauer* v. *Commissioner*, 273 U. S. 103, 106; *Moore* v. *Dempsey*, 261 U. S. 86; *Yick Wo* v. *Hopkins*, 118 U. S. 356. Cf. *Akins* v. *Texas*, 325 U. S. 398, 402; *Tot* v. *United States*, 319 U. S. 463, 473 (concurring opinion); *Mooney* v. *Holohan*, 294 U. S. 103.