**Russell COLLINS, Jr., Individually and on behalf of all other persons similarly situated,**

v.

**Joseph VITEK, in his official capacity as Warden of the New Hampshire State Prison, et al.**

**Civ. A. No. 73–107.**

United States District Court,
D. New Hampshire.

May 13, 1974.

John W. Cotton, New Hampshire Legal Assistance, Concord, N. H., for plaintiff.

David W. Hess, Asst. Atty. Gen., for the State of New Hampshire, Concord, N. H., for defendants.

## OPINION

BOWNES, District Judge.

In this action, plaintiff, a prisoner in the New Hampshire State Prison (hereinafter NHSP), challenges disciplinary action taken against him by prison officials. The disciplinary action was based on an allegedly loud, profane, and inflammatory statement made during a general prison lockup and shakedown at the NHSP. Plaintiff has challenged the constitutionality of the substantive charge and the procedural aspects of the disciplinary action. Jurisdiction is based on 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3), (4).

## I. THE FACTS

The operative facts are not seriously in dispute. On or about April 4, 1973, plaintiff was apprised, by written notification, of a disciplinary charge against him. The charge concerned certain loud, profane, and inflammatory remarks [1] allegedly made by plaintiff during the early stages of the lockup and shakedown which occurred at the NHSP in March of 1973. *See* Hoitt v. Vitek, 361 F.Supp. 1238 (D.N.H.1973). On April 12th a hearing on the Prison's charge was held before a Prison Disciplinary Board consisting of Ronald Fuller, Deputy Warden; David Clarke, Jr., Associate Warden; and Martin Gross, Esq., a Prison trustee. Both Major Dow, who prosecuted the case for the Prison, and plaintiff presented witnesses. Cross-examination was permitted. There was conflicting testimony over the content of plaintiff's alleged statement. At some point during the Prison's case-in-chief it became apparent that the Warden of the Prison had been an eyewitness to the alleged incident. Mr. Gross then suggested that Major Dow call him as a witness. Testimony of Gross. Warden Vitek appeared and, over plaintiff's objection,[2] testified that he heard Collins make the alleged remark. Further testimony by the Warden relative to Collins's sentence was not permitted.

Following the hearing, the Board found that plaintiff had shouted the profane and inflammatory remarks which constituted the basis of the disciplinary charge and that this action violated Prison Rules 2 and 16;[3] it recommended that plaintiff be placed in administrative segregation "for a period not to exceed 6 months." Complaint, Exhibit 1. At the time that the Disciplinary Board issued its decision, there were no written standards or guidelines of punishment for infraction of Prison

---

1. The Disciplinary Report, which is the basis of the disciplinary action against plaintiff, characterizes plaintiff's threats as "threats of violence after lockup." The "Detailed Account of Offense and Surrounding Circumstances" provides the following:

 Inmate Collins was heard on numerous occasions in the past few days to shout and say, "Calm it down, the sooner we stop the noise, the sooner they have to let us out of our cells and then we can burn the fucking place down."

 Plaintiff's Exhibit 3.

2. The objection does not appear explicitly in the Deposition of Hearing of Disciplinary Board, and it appears that the objection may not have been registered until after the Warden had been testifying for some time.

3. The rules read as follows:

 2. Quiet must be maintained in the cell block. Talking, laughing, reading aloud, shuffling feet, or talking from cell to cell is strictly forbidden.

 16. Profane or vulgar language is prohibited at all times.

rules. On April 30th an Appeal Panel of three Prison trustees, Mary Thyng, Robert Daston, Esq., and J. P. Maurice Cote, affirmed the decision of the Disciplinary Board with the proviso that plaintiff

> shall be entitled to a review by the State Disciplinary Board at the expiration of ninety (90) days and each thirty (30) days thereafter. Complaint, Exhibit 2.

Plaintiff was placed in administrative segregation on April 13th and served all but a week or two of the six month sentence. During this period, plaintiff was denied the right to attend religious services.

## II. THE CLAIMS

Originally, there were five claims: (1) that the disciplinary action amounted to punishment of pure speech in violation of plaintiff's First Amendment rights; (2) that the appearance of Warden Vitek "constituted improper 'command influence'" in violation of this court's decision in Collins v. Hancock,[4] 354 F.Supp. 1253 (D.N.H.1973), and plaintiff's Fourteenth Amendment rights to due process; (3) that the Disciplinary Board's decision was not based on the evidence and was, therefore, in violation of Collins v. Hancock, *supra,* and plaintiff's Fourteenth Amendment rights to due process; (4) that the imposition of major punishment "without written rules and written standards for the punishment to be inflicted for specific offenses" violated plaintiff's Fourteenth Amendment due process rights; and (5) that the imposition of such a harsh penalty for violation of minor rules is arbitrary and capricious conduct on the part of NHSP officials and constitutes a violation of plaintiff's Fourteenth Amendment due process rights.

Plaintiff also prayed that this court determine that his action be maintained as a class action under Rule 23(c)(1).

Subsequently, this court granted defendants' motion to dismiss as to plaintiff's first,[5] fourth,[6] and fifth causes of action, but granted plaintiff's motion to amend the complaint by adding a sixth cause of action alleging a denial of plaintiff's constitutional right to practice his religion. Plaintiff's motion for this case to proceed as a class action was denied. *See* Order of June 22, 1973. On October 15, 1973, plaintiff's motion to reinstate his fifth cause of action was granted, based on the representation that he did not receive the periodic review guaranteed by the decision of the NHSP Board of Appeals, *see* Complaint, Exhibit 2, and concurred in by this court's Order of June 22, 1973.

At this time, there are, therefore, four claims before this court: (1) the command influence claim; (2) the claim that the Disciplinary Board's decision was not based on the evidence; (3) the claim that plaintiff's sentence was arbitrary and capricious and did not receive proper periodic review; and (4) the free exercise of religion claim.

## III. THE MERITS

Prisoners are clearly entitled to due process before severe punishment can be imposed on them. This fact was recognized in an earlier opinion of this court, where, in reviewing the solitary confinement and punitive segregation of the present plaintiff on another charge, I explored the contours of due process in the prison hearing context in considerable depth. At that time, I set out some Suggested Prison Due Process Requirements for disciplinary action. Collins v. Hancock, *supra.* Since this is the first

---

4. The case is known as Collins v. Hancock, but became Collins v. Vitek when Vitek replaced Warden Hancock.

5. The basis for dismissal of this claim lies in the "fighting words" exception to First Amendment protection of speech. Chaplinsky v. New Hampshire, 315 U.S. 568, 62 S.

Ct. 766, 86 L.Ed. 1031 (1942). This exception is particularly apropos in the highly inflammatory context of a general prison lockup.

6. Although this cause of action was dismissed, the problem of standardless punishment is discussed *infra.*

case involving these hearing procedures, I have allowed a full hearing. However, this court cannot sit as a court of review of prison hearings. Federal district courts are "ill-equipped to deal with the increasingly urgent problems of prison administration and reform," Procunier v. Martinez, —— U.S. ——, ——, 94 S.Ct. 1800, 1807, 40 L.Ed.2d 224, 46 L.W. 4606, 4609 (1974), and, therefore, should not sit as "the frontline agencies for the consideration and resolution of the infinite variety of prisoner complaints." Procunier v. Martinez, *supra* at 1807 n. 9. Moreover, the Collins v. Hancock procedures clearly call for independent review of any Disciplinary Board action, and the NHSP Appeals Board has indicated that severe disciplinary action "shall be . . . review[ed] by the State Prison Disciplinary Board at the expiration of ninety (90) days and each thirty (30) days thereafter." Complaint, Exhibit 2. For these reasons, further review by this court will be limited to a determination of whether or not the Collins v. Hancock hearing procedures have been satisfied.

## A. COMMAND INFLUENCE

 Plaintiff complains that Warden Vitek's appearance and testimony at the disciplinary hearing denied him due process because two of the three members of the panel, Deputy Warden Fuller and Associate Warden Clarke, are immediately subordinate to the Warden. Command influence can be a problem in prison disciplinary hearings. To eliminate the problem, courts have recognized that the hearing panel must be neutral and detached.

> From it should be excluded anyone who has personal knowledge of the incidents charged or anyone who has a "superior-subordinate" relationship *to the accuser.* An impartial decision-maker is essential. Goldberg v. Kelly, 397 U.S. 254, 271, 90 S.Ct. 1011, 25

L.Ed.2d 287 (1970). . . .

> [T]hose sitting should not have any prior connection with the case, nor should those sitting be in a supervisory or subordinate position *to those bringing the charges.* This is necessary to eliminate the possible "command influence" which would otherwise be inherent in such a situation. [Citing cases.] Colligan v. United States, 349 F.Supp. 1233, 1237 (D. Mich.1972). [Emphasis added.]

However, this requirement does not automatically render incompetent an eye-witness to alleged infractions, merely because he is a superior of one of the panel members. Of course, it would be unfair for a superior to prosecute a case‾ before his immediate inferiors. Similarly, it would be unfair to permit inferiors to sit in judgment over a charge brought by their superior. Moreover, a superior may not comment on the disposition or sentencing of a case in his testimony before a panel composed of his inferiors. But I am not faced with these or related situations. Warden Vitek neither brought nor prosecuted the disciplinary action in this case. *See* Plaintiff's Exhibit 3 and Deposition of Hearing of Disciplinary Board. Furthermore, proffered testimony by the Warden as to the appropriate disposition of plaintiff's case was excluded. Disposition of Hearing of Disciplinary Board at 27.[7]

Although both Deputy Warden Fuller and Associate Warden Clarke are responsible to, and in a sense, serve at the pleasure of, Warden Vitek, each testified that the Warden's appearance and testimony did not affect his decision. I accept this testimony. Furthermore, the required presence on all Prison Disciplinary Boards of "at least one member who is not a prison official" seems to insure against *command influence.* Collins v. Hancock, *supra.* The third member of the Board, Martin Gross, is a

---

7. In an appropriate case, where the Warden has been intimately involved in the investigatory and accusatory stages of a disciplinary action, it would be necessary to purge the panel of his inferiors.

practicing attorney in the City of Concord. His position as Prison trustee is not in any way dependent upon the Warden.

### B. PLAINTIFF'S CLAIM THAT THE DISCIPLINARY BOARD'S DECISION WAS NOT BASED ON THE EVIDENCE

Plaintiff claims that the decision of the Disciplinary Board was not based on the evidence. While it is true that "[it is] a violation of due process to . . . punish a man without evidence of his guilt," Thompson v. Louisville, 362 U.S. 199, 206, 80 S.Ct. 624, 629, 4 L.Ed.2d 654 (1960), plaintiff here appears to have confused the fact-finding and sentencing roles of the Disciplinary Board. The Board's written decision shows that it found that plaintiff "in substance, urged that inmates quiet down so as to obtain an end to the lockup, and thus be in a position 'to burn the fucking place down.'" Complaint, Exhibit 1. This finding was based on substantial evidence. Deposition of Hearing of Disciplinary Board. Other remarks made in the Board's decision are not necessary to the finding that plaintiff violated Prison Rules 2 and 16.[8] They reflect the Board's concern with plaintiff's background, disposition, and possible future actions—all considerations relevant to sentencing, a problem specifically dealt with in the next portion of this Opinion.

### C. THE CLAIM OF ARBITRARINESS AND IMPROPER REVIEW [9]

Although prison officials have the undisputed power to make rules and regulations appropriate to the maintenance of the efficient and safe operation of the institution, that power does not include the right to arbitrarily and unreasonably punish prisoners for the infraction of a rule. Hudson v. Hardy,

134 U.S.App.D.C. 44, 412 F.2d 1091, 1093 (1968); Fulwood v. Clemmer, 206 F.Supp. 370, 379 (D.D.C.1962). *See* Jackson v. Bishop, 404 F.2d 571 (8th Cir. 1968).

A punishment out of proportion to the violation may bring it within the bar against unreasonable punishments. Fulwood v. Clemmer, *supra* at 379.

However, this court should not interfere with the orderly administration of prison discipline, unless it appears that a prisoner's constitutional rights have been violated. Here, plaintiff has not alleged that his punishment was cruel and unusual in violation of the Eighth Amendment. He relies instead on the due process claim that his punishment was arbitrary and an abuse of discretion.

There can be no doubt that the sentence meted out to Mr. Collins was indeed severe, judged by any standards. However, I cannot say that his punishment was arbitrary and capricious. Evidently, the Board believed that his threat to burn the Prison down was not an idle one. Although plaintiff was charged with a relatively minor violation, Prison officials were entitled to take the prisoner's past record into account when determining his sentence. Fulwood v. Clemmer, *supra* at 379. Here, plaintiff's record is not pretty.

It includes reckless operation of a motor vehicle with death resulting, robbery and assault, possession of a dangerous weapon, possession of narcotics,[10] . . . Collins v. Hancock, *supra* at 1255.

Moreover, plaintiff's prison record contains instances of violence perpetrated against other inmates, including the stabbing of a fellow prisoner. Collins v. Hancock, *supra*. It is against this background, of which the Disciplinary Board

---

8. *See* note 3 supra.

9. Plaintiff's claim of arbitrariness of the sentence is really not an issue, since the claim was dismissed. Order of June 22, 1973. Reinstatement of this claim, as pointed out earlier, was based solely on the representation that plaintiff did not receive proper periodic review of his sentence.

10. My opinion in Collins v. Hancock, 354 F. Supp. 1253 (D.N.H.1973), recited Collin's record as including a conviction for "unlawfully carrying a firearm." 354 F.Supp.

was aware, that plaintiff's sentence must be assessed.

■ The underlying basis for this portion of plaintiff's claim is the lack of written guidelines in the punishment and sentencing area. Although sentencing has traditionally been an area given much discretion, even judges are limited by statutory standards. Prisoners have a right to know the scope of punishment possible for infractions. Moreover, written guidelines may well serve to eliminate the equal protection problems inherent in a standardless sentencing procedure.

■ Plaintiff also claims that his sentence was not properly reviewed after ninety days and every thirty days thereafter as required by the decision of the Board of Appeals. This claim is simply unsupported by the evidence. Keeping in mind the fact that this hearing was the first under the new guidelines, it appears that plaintiff's sentence was reviewed after ninety-one, one hundred twenty-two, and one hundred fifty-two days. Although the ninety-first day review was informal, and plaintiff was not present, he was allowed to attend the later formal reviews.

■ Plaintiff complained that the Review Board, which was made up of Fuller, Clarke, and Captain Thornton, was substantially the same as the Disciplinary Board which passed sentence on him and, therefore, not impartial. Aside from the fact that the Review Board was not a component of the due process procedure ordered by this court, the review procedure does not seem inequitable. Furthermore, I take judicial notice of the small size of the NHSP staff, a fact which would make review by officials totally uninvolved in any stage of the disciplinary process well-nigh an impossibility.

### D. FREE EXERCISE OF RELIGION CLAIM

■ Plaintiff contends, and the defendants do not deny, that he was denied the right to attend regular religious services while he was in segregation. Since plaintiff is no longer in segregation, the issue is now technically moot. However, it is to be made clear that all prisoners, regardless of their status or type of confinement, are entitled to attend religious services of their choice, if such services are available.

### IV. CONCLUSION

I find that the actions of the NHSP officials were in substantial compliance with the procedures set out in Collins v. Hancock, *supra,* and that plaintiff's constitutional rights have not otherwise been infringed. The plaintiff's prayers for declaratory judgment, injunctive relief, and damages are denied.

Judgment for the defendants.

So ordered.

at 1255. Since that time, counsel for plaintiff and defendants have agreed and stipulated that this reference was improper and should be deleted.