**UNITED STATES of America ex rel. Ivory HUBBARD, Petitioner,**

v.

**Joseph CANNON, Warden, Joliet-Stateville Branch, Illinois State Penitentiary, and Allyn R. Sielaff, Director, Illinois Department of Corrections, Respondents.**

**No. 74 C 2701.**

United States District Court, N. D. Illinois, E. D.

Sept. 23, 1975.

Edward M. Genson, Chicago, Ill., for petitioner.

William J. Scott, Atty. Gen., Stuart W. Opdycke, Asst. Atty. Gen., Chicago, Ill., for respondents.

## MEMORANDUM DECISION

MARSHALL, District Judge.

Petitioner, Ivory Hubbard, seeks habeas corpus relief from Illinois armed robbery and murder convictions. 28 U. S.C. §§ 2241, 2254. He is incarcerated at the Stateville Branch of the Illinois. State Penitentiary. His convictions following a jury trial were affirmed by the Illinois Supreme Court. *People v. Hubbard*, 55 Ill.2d 142, 302 N.E.2d 609 (1973). He did not seek review by certiorari from the United States Supreme Court nor did he seek post conviction relief under the Illinois Post Conviction Proceeding Act, Ill.Rev.Stat., ch. 38, § 121 *et seq.* (1973). However, while respondents have moved to dismiss the petition and, alternatively, have moved for summary judgment, no claim is made that petitioner has failed to exhaust his state remedies because the issues he raises here were presented to the Illinois Supreme Court and decided adversely to him on direct review. Under these circumstances, Illinois courts would apply

*res judicata* to a post conviction proceeding which raised the same issues. In this situation petitioner need not pursue the state post conviction remedy because it is "ineffective." 28 U.S.C. § 2254(b); *United States ex rel. Williams v. Brantley,* 502 F.2d 1383, 1385–86 (7th Cir. 1974).

In his petition here, petitioner asserts: (1) that he was not proved guilty beyond a reasonable doubt, (2) he was prejudiced and denied a fair trial by improper restrictions on his counsel's cross-examination of state witnesses, (3) he was prejudiced and denied a fair trial by the conduct of the trial court in admonishing his counsel in the presence of the jury, and (4) rights guaranteed him under the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States were violated by the receipt in evidence of statements made by him while, as he asserts, he was in unlawful custody or without adequate admonitions required by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Clearly his first three contentions must rise to the level of a denial of due process under the Fourteenth Amendment.

A careful review of the entire transcript of petitioner's trial which has been submitted here by respondents in support of their alternative motions to dismiss and for summary judgment, shows, as the Illinois Supreme Court found, sufficient substantial evidence to support petitioner's conviction. Thus, the evidence showed that on November 20, 1967 between 6:00 and 7:00 p. m., petitioner met four friends at a poolroom in Chicago. From there the group went to the apartment of a friend. While in the apartment, petitioner produced a .22 caliber sawed-off rifle.

The five left the apartment, petitioner taking the rifle with him. Outside, two of the group spotted a man they believed to be an insurance collector. According to the testimony at trial, the members of the group looked at one another without saying a word and split up in different directions. One of them, Celester Jones, "snatched" the rifle from petitioner and proceeded to run down the hall in the apartment building with it. The other four members of the group, including petitioner, went down one floor where they saw the insurance collector. The collector was shot, killed and robbed.

True, petitioner asserted that he sought to take the gun back from Jones and wrestled with him for it. When he concluded that he could not take the gun, he left. As the Illinois Supreme Court noted, he was not present at the time of the killing. But certainly the evidence was sufficient for a jury to find that he was a participant in the crime. His production of the weapon prior to the incidents giving rise to his prosecution was virtually unexplained.

■■ On a federal habeas collateral attack on a state court conviction, complaints as to the sufficiency of the evidence cannot be heard unless the record is so devoid of evidentiary support as to raise an issue of due process. *United States ex rel. Johnson v. Illinois,* 469 F. 2d 1297 (7th Cir. 1972), *cert. denied,* 411 U.S. 920, 93 S.Ct. 1560, 36 L.Ed.2d 313 (1973). Indeed, only when there is no evidence to support the finding of guilty may it be set aside as violative of due process of law. *Thompson v. Louisville,* 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed. 2d 654 (1960). Accordingly, so far as petitioner challenges the sufficiency of the proof, respondents' motions to dismiss or, alternatively, for summary judgment are granted.

Petitioner's next two contentions—restrictions on his counsel's cross-examination and trial court admonitions of his counsel—are closely interrelated. The trial was sharply contested and extended over several days. On four occasions, the trial court sustained objections to questions put on cross-examination upon the grounds that the questions were "leading." In affirming, the Illinois Supreme Court said that the questions "were more than leading  . . . .

in several instances [they] put words in the witness' mouth." 302 N.E.2d at 613.

■■■ We do not agree with either of the characterizations made by the Illinois courts, but again our standard of review is sharply curtailed. A federal habeas court may not review state court evidentiary rulings unless they offend a specific guarantee of the Constitution, or are so egregious or irrational as to deprive the defendant of the fair trial guaranteed by the Due Process Clause of the Fourteenth Amendment. *United States ex rel. Bibbs v. Twomey*, 506 F.2d 1220, 1222–23 (7th Cir. 1974). While cross-examination is an element of the constitutional right of confrontation, control over cross-examination remains largely discretionary. A review of the record here does not disclose an abuse of that discretion and it certainly does not disclose curtailment of cross-examination so egregious as to deprive petitioner of a fair trial. Indeed, while objections were sustained, petitioner's trial counsel succeeded by rephrasing the questions to make the point he sought.

■ The same is true of the trial judge's admonitions. There were instances of verbal exchange between the court and counsel. In the main, they were invited by counsel, who, in the presence of the jury, pressed for an explanation of the court's rulings. But the court did not chastise or berate counsel. Certainly his effectiveness was not impaired by the remarks addressed to him by the court. The Illinois Supreme Court was satisfied with the fairness of the trial and under no circumstances could we say in regard to these two contentions that the trial was not the fair one contemplated by the Fourteenth Amendment.

The fourth contention cannot, however, be so readily disposed of. The transcript of proceedings in the state court discloses that the police first contacted petitioner as a result of a tip which led them to a boy who stated that he had been told by petitioner that petitioner had seen some boys shoot an insurance man while robbing him. The police went to the home of petitioner and, after first telling them that he was his brother, petitioner conceded his identity and told the police that he did have knowledge of the occurrence. But he denied participating in it. He agreed to point out the buildings and apartments where the various parties lived and generally to assist the police in locating them. He accompanied the officers in their squad car and directed them until they finally located and arrested two others of the group. Before taking them and the petitioner to the police station, the officers bought sandwiches for everyone.

On arrival at the station petitioner and the other two boys were placed in one room where they ate their sandwiches and the officers sat in an adjoining room where they ate their lunch. The door between the two rooms was open and the officers overheard a conversation among the three boys in which petitioner was asked why he was not under arrest and was accused of participating in the crime and receiving money. Petitioner said he had given the gun to Brooks (one of the two boys at the station) but Brooks said he had given the gun back to petitioner. Petitioner then said he had given the gun to Jones (another participant in the crime who was present at the station) and had given his share of the money taken from the victim to Jones and that Jones had shot the man. Brooks also said that it was Jones who had shot the man.

At this point, one of the police officers reentered the room where the boys were situated and placed petitioner under arrest. In the language of the Illinois Supreme Court, he "advised him of his rights." 302 N.E.2d 609. Petitioner then made certain oral statements concerning the offense. About two hours later, a police officer said that he would bring petitioner's cooperation to the attention of the State's Attorney's Office. Several hours thereafter an Assistant State's Attorney took a full written

statement from petitioner after fully advising him of his constitutional rights in accord with the requirements of *Miranda*.

Petitioner claims that he was in custody from the time he accompanied the police officers on their search for the other participants, and that as a consequence, the officers were under a duty to give him the *Miranda* admonitions. He also contends that he was unlawfully arrested without probable cause at the time he accompanied the officers on the search for the other participants with the result that all statements made by him, both with his companions and to the police and to the Assistant State's Attorney, should have been suppressed as fruits of the unlawful arrest. *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). Finally he contends that the advice which was given him in respect to his counstitutional rights following his formal arrest was inadequate so as to render inadmissible statements made by him to the police thereafter and to the Assistant State's Attorney.

■ The state court record of proceedings refutes petitioner's contentions that he was in custody and unlawfully arrested when he accompanied the police officers in their search for the other participants. The evidence is overwhelming that his participation with the police was voluntary and in no way coerced and that he was not arrested until the police overheard his conversations with his companions while petitioner's group and the police were eating lunch. The fact that the police anticipated that they might learn information in respect to the offense as a result of the conversation among the three boys does not render the police conduct constitutionally impermissible.

■ However, the record is inadequate with respect to the advice given petitioner once he was formally arrested and his freedom restrained. Clearly at this point the implementations of the Fifth and Sixth Amendments required

by *Miranda* came into play. It is undisputed that the Assistant State's Attorney adequately advised petitioner before he interrogated him. But the precise dimensions of the police officers' admonitions and the consequences of inadequacy, should they be found to be such, should be determined only after an evidentiary hearing.

By letter petitioner has requested the appointment of counsel. He has specifically requested that Mr. Edward Genson of the Bar of this court be appointed to represent him. Mr. Genson represented petitioner in his state court proceedings and he is willing to accept the appointment. Accordingly, Mr. Edward Genson is appointed to represent petitioner.

The motions of respondents to dismiss or alternatively for summary judgment are granted in part and denied in part in accord with the views herein expressed. Respondents are ordered to answer within 20 days. The cause is set for report on status on October 16, 1975, at 10:00 a.m.