Wood, Chief Judge, dissenting.
This is an unusual case, but in the end it is not one that we should bar from adjudication. I therefore dissent from the majority's conclusion that John Doe's suit to change his name cannot move forward in its present form. As the majority notes, Doe is a Mexican national who is lawfully in the United States after a grant of asylum. As a transgender male, he wants to change his name from his birth-name of "Jane Doe" to the gender-appropriate name "John Doe." His efforts have been blocked by an Indiana law that requires name-change petitioners to provide proof of U.S. citizenship. Ind. Code § 34-28-2-2.5(a)(5) (2016).
My colleagues conclude that Doe's suit must be rejected before it is ever considered. They first note that Indiana's Governor is under no legal obligation to enforce the name-change statute. This fact, they say, means that the Eleventh Amendment bars Doe's suit against the Governor. Ante at 976-77. (I do not understand why a conclusion that a certain action lies outside the scope of a statute conferring authority on an official leads inexorably to a conclusion that the state's sovereign immunity also shields that official, but I put that question to one side for present purposes.) Next, they conclude that the state Attorney General is not a proper defendant, because they can identify no criminal penalties associated with name changes. Id. at 977. The Executive Director of State Court Administration falls out of the case because all the Director does is create non-mandatory forms, and they regard the link between those forms and name changes as *980 too tenuous to support this lawsuit. Id. at 977-78. Finally, they conclude that Doe lacks standing to sue the Marion County Clerk of Court because Doe can neither establish a link between the Clerk's authority and a name-change order nor can he show that any court order addressed to the Clerk would make a difference. Id . at 978-79.
In my view, the majority's analysis gives insufficient weight to the significant roles played by the Attorney General, Executive Director, and Clerk in enforcing the name-change statute and preventing Doe from securing official recognition of his identity. Because the authority and duties of all three undergird the deprivation of constitutional rights asserted by Doe, all three must answer to his suit. Moreover, while I agree with the majority that the Governor's role in administering section 34-28-2-2.5(a)(5) is attenuated, I would give Doe an opportunity to amend his complaint to name other executive-branch officials whose responsibilities include the policing of the name a person uses in order to receive services or to deal with the state.
Looking first at the Executive Director and the Clerk, one can see that their authority to create forms, issue guidance, and move along petitions, enables them to exert substantial influence on the name-change process. This is best illustrated by example. Suppose, for example, the Executive Director's name-change form stated at the top that no traditionally Muslim names could be submitted, and that the Clerk routinely discouraged or refused to accept applications with such names. Over and above the psychic harm of such an action (which itself would be at least as offensive as forbidding the teaching of a particular language, for instance, see Meyer v. Nebraska , 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923) ), the chilling effect on name-changes for the group experiencing such discrimination would be powerful-powerful enough, I should think, to support an injunction against that practice.
I therefore do not agree with the majority that the Clerk's role is so minor that no effective relief can come from that quarter. Doe seeks to compel the Clerk to accept an application with a name that does not reflect his birth name and to stop discouraging attempts to submit such an application. The majority accepts counsel's word for the fact that Clerks in the past have accepted applications that do not conform to Indiana's name-change law, but at this early stage in the proceedings we do not have a complete record on this point. We must accept Doe's representation that such applications are normally rejected for noncompliance with Indiana law, and that an application from him would suffer the same fate.
As for the Attorney General, the majority acknowledges that Indiana's courts have the power to punish perjurers or those who commit a fraud on the court, but that is where it leaves matters. It observes that there are no criminal penalties directly tied to violations of Ind. Code §§ 34-28-2-2 and 34-28-2-2.5, and from this it assumes that the Attorney General has no meaningful role to play in their implementation. In fact, both perjury and fraud can also be prosecuted independently: Indiana recognizes perjury as a stand-alone crime, see Ind. Code § 35-44.1-2-1 (a felony; see also Ind. Code § 34-28-2-2(a) (requiring that name-change petitions include proof of citizenship and be sworn "under the penalties of perjury"), as well as obstruction of justice, see Ind. Code § 35-44.1-2-2 (a felony). Nonetheless, the majority appears to treat these consequences as too indirect to sweep in the Attorney General. I would not dismiss them so readily.
Furthermore, even if the majority has correctly assessed those criminal remedies, *981 there is more to Doe's case than the possibility of abuse of the state court's process. Doe also cites the misdemeanor of "false identity statement," which punishes knowing material misstatements of identity in connection with official proceedings or investigations, when done with the intent to mislead public servants. Ind. Code § 35-44.1-2-4. This is a big problem for Doe: if he presents himself in a manner that accords with his gender identity-that is, as John Doe, rather than under his "legal" name, Jane Doe-he is at risk of being prosecuted for a Class A misdemeanor. Id. at 35-44.1-2-4(a). And that is not all. For example, an applicant for a driver's license must provide "[t]he full legal name of the applicant." Ind. Code § 9-24-9-2(a)(1). Failure to comply with this requirement (or any other rule in that chapter of the Indiana Code) is a Class C infraction. Ind. Code § 9-24-9-6. These might not be the strictest penalties in the world, but they lie within the authority of the Attorney General to pursue, see Ind. Code § 4-6-1-6, and they easily support injury-in-fact, causation, and redressability. (Although Doe did not cite the BMV provision in his briefs, we are entitled to take judicial notice of Indiana's statutes. The extent to which these matters are addressed by the state's statutes is a pure question of law within this court's de novo review powers.) Taking all these provisions into account, Doe's case proves to be much closer to Baskin v. Bogan , 766 F.3d 648 (7th Cir. 2014), than the majority allows. Indeed, I would find it controlled by Baskin insofar as he is suing the Attorney General.
Last, we have the state's Governor. I agree with the majority that he was properly dismissed. From a practical standpoint, as it notes, one should not be able simply to sue the Governor every time some part of the state's executive branch does something objectionable. Instead, it is necessary in each instance to see how directly the Governor is connected with the contested action. If the Governor has meaningful oversight over a particular area, it has been established since at least Ex parte Young , 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), that an aggrieved person may sue him or her as the responsible official for prospective injunctive relief without running afoul of the Eleventh Amendment. If instead the responsibility is lodged in a department head, such as the Commissioner of the BMV, then that official is the proper person to sue under the Ex parte Young regime. There are practical reasons for taking care not to have a system under which the Governor automatically stands in for every department head. Such a rule would burden the Governor's office with litigation over countless matters for which state law assigns primary responsibility to other officials (some of whom, such as the Attorney General, are independently elected).
The majority hints that Doe might "have been able to overcome the Eleventh Amendment had he sued the Governor to enjoin the enforcement of the BMV's requirements."Ante at 976. But then it immediately says that such a suit would have failed, because the Governor has no duty to enforce the name-change statute. Yet someone must have the authority to enforce that statute; I have explained above why I believe that one such person is the Attorney General, and I add here that another such person would have been the Commissioner of the BMV. This is not a case that forces us to accept the unpalatable notion that alleged constitutional violations escape all judicial review.
Consider the consequences if any state function entrusted to the state-court system were placed beyond the power of the federal courts to address (an outcome, I note, that would be incompatible with *982 Mitchum v. Foster , 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972), which upheld the power of the federal courts to issue civil rights injunctions against state-court proceedings). A state hypothetically could refuse to allow an African-American person to change his or her surname on an identification-card to that of a Caucasian spouse, in flagrant violation of Loving v. Virginia , 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967), or it could pass a statute refusing to allow a single surname for a same-sex couple, in disregard of the Supreme Court's decision in Obergefell v. Hodges , --- U.S. ----, 135 S.Ct. 2584, 192 L.Ed.2d 609 (2015). The expedient of placing final authority for name-changes in the state court system cannot operate to avoid accountability for potential violations of the federal constitution by other state officials. Nor can it have the effect of negating the right of any person to bring an action under 42 U.S.C. § 1983, which lies within the subject-matter jurisdiction of the federal courts, see 28 U.S.C. §§ 1331, 1343(a).
In the end, I believe that the majority has attached too much importance to the fact that the state courts are the ones charged with the duty of issuing name-change orders. The fact that this responsibility is lodged in the courts does not mean that Doe's suit is nonjusticiable. Name changes are not the only state function that is assigned to state courts. Uncontested divorces go straight to the state court, for example, as do probate matters when a will needs to be probated, or an estate needs to be administered. When there is a problem in the system, those aggrieved by that problem sue the state official best suited to the situation. As I noted earlier, in addition to the avenues he chose, Doe could have sued the Commissioner of the BMV to compel the director to issue a driver's license to him in the name of "John Doe." If the Commissioner had refused, Doe could have raised his complaints about Indiana's name-change statute in a lawsuit in state or federal court. It is likely that the Commissioner would have defended his action in such a lawsuit on the basis of the state statute, but Doe's response to such a defense would have rested on his constitutional rights.
Suing each department head, one by one, for particular redress would not be a particularly efficient system, but that seems to be the only path the majority has left open for an action in federal court. Evidently it acknowledges that Doe could sue the Commissioner of the BMV in order to get the proper name on his driver's license; the Commissioner of the Indiana Department of Revenue for the right to file his taxes under the proper name; the Recorder of Deeds where he lives in order to have a property deed listed under the proper name, and so on. I also understand the majority to be leaving open the door to a more general suit in state court. Such a suit might be triggered by the state court's predictable rejection of Doe's application for a name change. Doe might have a right to appeal that rejection to a higher Indiana court. If he does, then he can raise his federal claims there. If no such right of appeal exists-that is, if the name-change court is "the highest court of [the] State in which a decision could be had," 28 U.S.C. § 1257(a) -he could go straight to the U.S. Supreme Court. See Thompson v. City of Louisville , 362 U.S. 199, 202, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960) (certiorari to local police court whose decisions were not otherwise appealable within the state-court system). What the majority has not explained to my satisfaction, however, is why the same suit cannot be brought in the form and forum Doe has chosen-that is, in a federal court, when no conflicting state-court proceeding or judgment exists.
What we know is enough to support Doe's lawsuit. We know that state law presently stands in the way of Doe's name *983 change, because it insists on U.S. citizenship even though Doe is lawfully in the country and is here as a recipient of asylum, meaning that he cannot safely return to his own country. The defendants (save the Governor) whom Doe already has named have the power to do something about his quandary. To repeat, Doe is alleging that the various state officials are refusing to process his case to correct his name, and that the state court would similarly deny relief unless the underlying law demanding U.S. citizenship is enjoined or otherwise set aside. This is more than enough to permit adjudication of the question whether such an injunction or declaratory judgment should be entered.
I would find that Doe can move forward against the Executive Director, the Clerk, and the Attorney General. I agree with my colleagues that the Governor was the wrong defendant. As I understand them, in addition, if Doe had named the various heads of agency or department who were responsible for recording a name on the different state-issued documents he holds, they may have come to a different result. In my view, Doe did not need to take the latter step, although if that is all that is needed to save the case, I would remand to give him the opportunity to do so. The underlying principle Doe is trying to vindicate is an important one, which has a broader application than may initially be apparent. I therefore respectfully dissent.