Joseph HAWKINS, a/k/a Joseph Davis, Appellant,

v.

Theodore WEST, Warden, Queens House of Detention, Appellee.

No. 851, Docket 82–2309.

United States Court of Appeals, Second Circuit.

Argued Feb. 15, 1983.

Decided May 4, 1983.

Howard B. Comet, Legal Aid Society, New York City (William E. Hellerstein, Legal Aid Society, New York City, on the brief), for appellant.

Joyce Andren, Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen. of the State of N.Y., Gerald J. Ryan, Asst. Atty. Gen., New York City, of counsel), for appellee.

Before LUMBARD, OAKES and NEWMAN, Circuit Judges.

OAKES, Circuit Judge:

In this case, decided by the district court after *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), but before *Daye v. Attorney General,* 696 F.2d 186 (2d Cir.1982) (en banc), we are called upon to determine whether a *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), claim that the evidence was insufficient to establish guilt beyond a reasonable doubt was adequately presented to the state courts under *Daye* to say that the habeas petitioner's claims were totally exhausted as required by *Rose.* The United States District Court for the Eastern District of New York, Thomas C. Platt, Judge, not having the guidance of *Daye,* assumed that the teaching of *Johnson v. Metz,* 609 F.2d 1052 (2d Cir.1979), and its semi-companion, *Gayle v. LeFevre,* 613 F.2d 21 (2d Cir.1980), required explicit labeling of a claim as federal to effectuate exhaustion. The court therefore denied the writ as premature under *Rose* and added the embellishment that *Rose* had *sub silentio* made the "futility" exception to the exhaustion requirement as espoused in, e.g., *LaBruna v. U.S. Marshal,* 665 F.2d 439 (2d Cir.1981), obsolete, inappli-

cable and no longer available to a petitioner seeking to overturn his state court conviction. We reverse on both the *Daye* point and the *La Bruna* issue which it may subsume.

## BACKGROUND

The petitioner in this case, Joseph Hawkins, was convicted in late 1975 of four counts of first degree robbery, N.Y. Penal Law § 160.15 (McKinney 1975), by the New York Supreme Court, Queens County, at a bench trial. The robbery took place inside an apartment building as Olga and Farkas Citron attempted to enter their apartment. Neither of them was able positively to identify Hawkins; Mr. Citron thought it was "possible" that Hawkins was one of the robbers, while Mrs. Citron was sure that Hawkins was *not* one of the robbers. The prosecution's chief witness was a security guard, Steven Jones, who testified that he observed the robbery from outside the building, through the lobby doors. Jones testified that he chased the robbers and was able to identify one of them as Hawkins. Hawkins on his own behalf testified that he had been at a friend's house at the time of the robbery and that he had left the house to pick up some food. He claimed that the two robbers—he identified two individuals in open court by name—told him to run because they were being pursued and that he did so. The friend's testimony supported Hawkins' version in some respects, but was in other respects inconsistent with it. Doubt was cast on the security guard's power to observe what he said he saw from the place at which he said he saw it; indeed, if one were to credit his testimony completely, one would wonder why he did not sooner do something more than look.

At the close of the evidence, but before the defense could sum up, the judge pronounced Hawkins guilty. The judge apologized for "jumping the gun" and allowed defense counsel to proceed. During the summation the judge expressed his concern that Hawkins had never protested his innocence or identified the other two individuals as the culprits until he took the stand. The judge then found Hawkins guilty. On appeal to the Appellate Division, Second Department, Hawkins claimed that his guilt was not established beyond a reasonable doubt and that the trial judge had drawn impermissible inferences from Hawkins' failure to protest his innocence. On the insufficiency of the evidence point, counsel argued only the facts and cited neither federal nor state constitutions or cases based on them. The Appellate Division reduced the sentence, but upheld the conviction without commenting on Hawkins' claims. *People v. Hawkins,* 63 A.D.2d 719, 405 N.Y. S.2d 128 (App.Div.1978).

The robbery conviction served as a predicate felony for Hawkins' sentencing in late 1980 as a second-felony offender on a sodomy charge. It was after that conviction that he filed a habeas corpus petition in federal court and Judge Platt denied the petition on the grounds that Hawkins had not exhausted his reasonable doubt claim because he did not "call attention to or frame his argument in terms of a federal constitutional claim," and noted that the Second Circuit has construed the exhaustion requirement narrowly, requiring federal claims to be raised expressly in state courts, citing *Gayle v. LeFevre,* and *Johnson v. Metz, supra.* Relying on the "total exhaustion" rule of *Rose v. Lundy,* Judge Platt dismissed the claim in its entirety, but granted leave to resubmit the exhausted claim. Hawkins moved for reargument, claiming that under *LaBruna v. U.S. Marshal,* 665 F.2d 439 (2d Cir.1981), the District Court should consider his insufficiency claim because it would be "futile" to pursue it any further in state court. Judge Platt read *Rose v. Lundy* as undercutting the futility exception to the exhaustion doctrine recognized in *LaBruna,* but entertained sufficient doubt on this point to issue a certificate of probable cause to appeal. While the appeal was pending this court decided *Daye v. Attorney General,* 696 F.2d 186 (2d Cir. 1982) (en banc).

## DISCUSSION

■ A. *Exhaustion of the reasonable doubt claim.* Under *Daye,* there is little question that Hawkins' brief in the Appel-

late Division "fairly present[ed] ... the constitutional nature of his claim." 696 F.2d at 194. Although Hawkins cited neither state nor federal cases, the precis of his first point stated that "[t]he people failed to prove beyond a reasonable doubt that appellant robbed Mr. and Mrs. Citron." The first sentence of the closing paragraph on the reasonable doubt point asserted that "[t]he prosecution's case fell quite short of that required to prove appellant's guilt beyond a reasonable doubt." Certainly this qualifies as an "assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution." *Id.* The right not to be convicted except upon proof establishing guilt beyond a reasonable doubt was not "novel" or in the process of being articulated by the federal courts at the time Hawkins appealed in 1976. *See In re Winship,* 397 U.S. 358, 361–362, 90 S.Ct. 1068, 1071, 25 L.Ed.2d 368 (1970). Any uncertainty that Hawkins' reasonable doubt claims failed to alert the state courts to his constitutional claim is eliminated by the reasonable doubt section of his brief, which consisted entirely of a discussion of the testimony and factual circumstances he thought insufficient to establish his guilt beyond a reasonable doubt and therefore qualifies as a fair presentation of the constitutional claim under *Daye's* requirement of an "allegation of a pattern of facts that is well within the mainstream of constitutional litigation." *Daye,* 696 F.2d at 194.

The State argues, however, that the claim is not exhausted because *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), established a new standard of review that the state court could not have been aware of when it decided Hawkins' appeal in 1978. And it is true that *Jackson* held that on *federal* habeas review of state convictions, where a petitioner asserts that the evidence was insufficient to establish guilt beyond a reasonable doubt, the proper standard of review was not the "no evidence" principle of *Thompson v. Louisville,* 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960), but instead was whether "no rational trier of fact could have found proof of

guilt beyond a reasonable doubt." *Jackson,* 443 U.S. at 324, 99 S.Ct. at 2791 (citation omitted). But *Jackson* did not announce a new constitutional right; it only altered the constitutional standard of review to ensure that the right previously recognized in *Winship* would be adequately protected, the necessary threshold showing, so to speak. That is to say, the result in *Jackson* flowed from *Winship.* As the Court said in *Jackson,* "After *Winship* the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." It added: "Contrary to the suggestion in the opinion concurring in the judgment, the criterion announced today as the constitutional minimum required to enforce the due process right established in *Winship* is not novel." 443 U.S. at 319 n. 12, 99 S.Ct. at 2789 n. 12 (citing cases).

We agree, on the other hand, that if the New York courts had operated under a "no evidence" rule prior to *Jackson,* the fact that *Jackson* was decided after Hawkins' appeal would argue strongly, perhaps conclusively, for resubmitting the reasonable doubt claim to state court on the theory that the new standard of review might produce a different result. *See, e.g., Picard v. Connor,* 404 U.S. 270, 276, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971); *James v. Copinger,* 428 F.2d 235, 242 (4th Cir.1970), *cert. denied,* 404 U.S. 959, 92 S.Ct. 318, 30 L.Ed.2d 276 (1971). But the state has not suggested that *Jackson* altered the standard of review used by the New York courts, and we have found no New York cases to that effect. On the contrary, in reviewing convictions to determine whether guilt was established beyond a reasonable doubt the New York courts have apparently never applied a standard as minimal as that followed in *Thompson* before *Jackson.* For example, a murder conviction was reversed on appeal where the only prosecution witness contradicted herself and there was an offer to show she was an amnesiac. *People v. Reed,*

40 N.Y.2d 204, 208, 352 N.E.2d 558, 561, 386 N.Y.S.2d 371, 374 (1976) ("So long as the burden is upon the People of not only removing the presumption of innocence, but of establishing the guilt of the accused beyond a reasonable doubt, a mere *scintilla* or even *some proof* is not sufficient to warrant the submission of the case to the jury.") (citations omitted, emphasis in original). As we said in *LaBruna v. U.S. Marshal,* 665 F.2d at 442 n. 3, "the New York Court of Appeals has consistently adhered to a sufficiency of the evidence standard which is functionally identical to the *Jackson* standard." Thus it would appear that Hawkins' claim was fairly presented under the standards we ultimately enunciated in *Daye,* having in mind, first, that *Jackson* emanated out of *Winship,* and, second, that the New York courts would not now apply a standard of review different from that which they applied when Hawkins first appealed.[1]

### B. *The futility exception.*

■ In the interest of ultimate judicial economy, and in the event that our resolution to the exhaustion question turns out to have been a misinterpretation of Supreme Court cases, we address the futility exception question as an alternative ground for our decision. We disagree with the district court's conclusion that a futility exception is necessarily inconsistent with the total exhaustion rule of *Rose v. Lundy, supra.* Judge Platt noted that Justice Stevens, in his *Rose* dissent, interpreted the Court's holding in *Rose* to mean that "any unexhausted claim asserted in a habeas corpus petition no matter how frivolous is sufficient to command the district judge to postpone relief on a meritorious exhausted claim." *Rose v. Lundy,* 455 U.S. at 542, 102 S.Ct. at 1215 (Stevens, J., dissenting). The district court reasoned that this was an

accurate reading of the Court's holding because the principal opinion did not contradict the premise of the criticism. Entirely apart from whether a dissent can be read to "box in" an issue that the Court does not directly address, we do not see how this statement has any bearing on those instances where it would be futile to submit a claim to state court because the substance of the claim—as asserted by the specific petitioner—has already been considered and rejected. Clearly, a frivolous claim is "futile" in the sense that it is unlikely to yield any relief, but that is not the sort of futility at issue here.

In this case, as in *LaBruna,* it would be "futile" to have Hawkins resubmit his claim because, assuming that the New York courts reviewed the reasonable doubt claim, they surely did so in accordance with applicable New York law which was at least as stringent as the standard now applicable to federal claims. Where presenting a claim in explicit constitutional terms would be futile because the state standard is such that a holding on the counterpart state claim precludes a different result on the federal claim, we fail to see the interest to be served in forcing the claim back to state court.

To be sure, there is a phrase appearing in *Engle v. Isaac,* 456 U.S. 107, 130, 102 S.Ct. 1558, 1572, 71 L.Ed.2d 783 (1982), that gives us caution. The Court there stated somewhat obliquely, in declining to find "cause" for procedural default under *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), that even if "a state court . . . has previously rejected a constitutional argument [it] may decide, upon reflection, that the contention is valid." If this statement is carried to its logical extreme one could hazard the conclusion that the Supreme Court might reject any futility ex-

---

1. The key evidence in this case, indeed almost the only evidence tying Hawkins to the crime, was the direct identification testimony of the security guard, Jones. Hawkins presented evidence from a Legal Aid investigation tending to show that the security guard could not have seen the robbery from where he stood, but the trial court resolved this factual dispute in the prosecution's favor. *See* 28 U.S.C. § 2254(d) (state court findings presumed correct); *Sumner v. Mata,* 449 U.S. 539, 547, 101 S.Ct. 764, 769, 66 L.Ed.2d 722 (1981) ("interest in federalism . . . requires deference by federal courts to factual determinations of all state courts"). The hearing on remand will determine whether this finding can stand.

ception whatsoever. Our cases, e.g., *Stubbs v. Smith,* 533 F.2d 64, 69 (2d Cir.1976) (futile to require exhaustion where prior state case law consistently rejected constitutional claim raised by habeas petitioner), do not permit us, however, yet so to hold. The Seventh Circuit has recently agreed. *Zelenka v. Israel,* 699 F.2d 421, 423 (7th Cir. 1983) ("when the State courts have held adversely to the petitioner's position in other cases or state law makes pursuit of a state remedy futile, the prisoner need not exhaust the state procedures for that remedy"). *See also Beaty v. Patton,* 700 F.2d 110, 112 (3d Cir.1983) (per curiam).

Judgment reversed and remanded.