**Frank CAMPANALE, Plaintiff-Appellant,**

v.

**David R. HARRIS, Superintendent, Green Haven Correctional Facility, Defendant-Appellee.**

**No. 90, Docket 82–2250.**

United States Court of Appeals, Second Circuit.

Argued Sept. 13, 1983.

Decided Dec. 9, 1983.

Henriette D. Hoffman, The Legal Aid Society, Federal Defender Services Unit, New York City, for plaintiff-appellant.

Marion R. Buchbinder, Asst. Atty. Gen., State of N.Y., New York City (Robert Abrams, Atty. Gen. of the State of N.Y., Melvyn R. Leventhal, Deputy First Asst. Atty. Gen., Judith A. Gordon, Asst. Atty. Gen., State of N.Y., New York City, of counsel), for defendant-appellee.

Before KAUFMAN, MESKILL and PIERCE, Circuit Judges.

PIERCE, Circuit Judge:

Appellant Campanale appeals from a judgment, filed March 30, 1981, of the United States District Court for the Southern District of New York, Pierre N. Leval, *Judge,* denying Campanale's petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.

For the reasons set forth below, we vacate the order denying the petition and we remand the cause to the district court with instructions to dismiss for failure to exhaust state remedies.

## I. BACKGROUND

Frank Campanale was convicted of murder in 1969, in New York Supreme Court, Bronx County, after a jury trial. This conviction stemmed from the fatal shooting of Gary Tanzella, a friend of appellant's estranged wife, Gloria Campanale. The shooting occurred at Gloria Campanale's apartment in the Bronx, New York.

Gloria Campanale was the State's principal witness. She testified that at approximately 1:00 a.m. on February 15, 1968, appellant Frank Campanale shot Tanzella in the head. Appellant testified that he did not shoot Tanzella; that he and Gloria became involved in a heated argument during which he and Tanzella scuffled; that he heard a shot; that he saw Tanzella "put his hand up to his head" and "[start] to fall"; and that, as he turned to leave the apartment, he "glanced around, and [he] saw [Gloria] with a gun in her hand."

During cross-examination, the prosecutor sought to impeach appellant's testimony concerning the shooting. The prosecutor elicited that, following the shooting, upon being arrested and informed of his rights, appellant made no statement "about Gloria firing the shot." The questioning of appellant by the prosecutor is set forth in the margin.[1] By inquiring about appellant's post-arrest silence, the prosecutor's apparent aim was to impeach the appellant by showing that if his version were true, he would have told the police the same explanation at the time of his arrest rather than remain silent.

The jury found Frank Campanale guilty of murder and on February 7, 1969 he was sentenced to a prison term of twenty years to life. Campanale appealed from this conviction asserting in part that the State's use of his post-arrest silence for impeachment purposes was a violation of his constitutional rights under the rule of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The conviction was affirmed

---

1. Q. Do you recall what conversation you had with [Detective Terelli after being arrested]?
   A. Yes, [he] advised me of my rights and said if I don't want to say anything I don't have to, and—
   Q. Can we assume that you didn't say anything?
   A. Call lawyer, and I didn't say anything.
   Q. Can we assume that you didn't say anything?
   A. No, we can assume.
   Q. You say that you were wrestling with Mr. Tanzella, there were three people in the room, you, Gloria and Tanzella, is that correct?

   A. Yes, sir.
   Q. And you were wrestling with Mr. Tanzella a shot was fired?
   A. Yes, sir.
   Q. You saw Tanzella going down to the ground, correct?
   A. Yes, sir.
   Q. You are now being placed under arrest?
   A. Yes, sir.
   Q. For assault?
   A. Yes, sir.
   Q. But you made no statement about Gloria firing the shot, is that correct, sir?
   A. Yes, sir, that's correct.

without opinion on May 25, 1971, by the Appellate Division, First Department, and leave to appeal to the New York Court of Appeals was denied on December 8, 1971. Six years after he was convicted, appellant moved *pro se* to vacate the judgment pursuant to N.Y.Crim.Proc.Law § 440.10 (McKinney 1971), and repeated his *Miranda* argument. The motion was denied by the State Supreme Court in April, 1975. The court refused to entertain appellant's *Miranda* claim, noting that the impeachment issue had been raised during the direct appeal. On June 17, 1975, the Appellate Division, First Department, denied leave to appeal this decision.

During the following year, the United States Supreme Court held, in *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), that cross-examination of a defendant concerning his post-*Miranda* warning silence for impeachment purposes violates the Due Process clause of the Fourteenth Amendment. *Id.* at 619, 96 S.Ct. at 2245. On April 3, 1979, appellant, *pro se,* filed a petition in the United States District Court for the Southern District of New York seeking habeas corpus relief under 28 U.S.C. § 2254, alleging, among other claims,[2] violation of his federal constitutional right to remain silent following arrest and citing *Doyle.*

The district judge observed that cross-examination of Campanale concerning his post-arrest silence was "constitutionally infirm" in light of *Doyle v. Ohio.* However, before he reached the merits of appellant's claims, Judge Leval *sua sponte* raised the question of exhaustion. He recognized that N.Y.Crim.Proc.Law § 440.10(1)(h) provided an available state remedy for appellant's *Doyle* claim, that appellant had not raised the issue of retroactive application of *Doyle* in the state courts, and that prior state court consideration was particularly appropriate in this case because it turns in part on issues of state law and policy. Never-

theless, Judge Leval excused appellant's failure to present the *Doyle* claim to the state courts, holding that "in view of the highly technical nature of the exhaustion considerations and the respondent's failure to raise the issue during the significant amount of time this action has been pending ... dismissal on exhaustion grounds would be unduly burdensome to the petitioner." Therefore, Judge Leval proceeded to reach the merits of appellant's claim. After reviewing the trial transcript, he concluded that even if *Doyle v. Ohio* were to be applied retroactively, a proposition he felt was questionable, the challenged cross-examination was harmless error, whereupon he denied Campanale's petition. For the reasons set forth hereinafter, we vacate the district court's order and remand with instructions to dismiss.

## II.   DISCUSSION

Appellant contends that the State's cross-examination concerning his post-arrest silence was constitutionally impermissible under the rule announced by the Supreme Court in *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). *Doyle,* however, had not yet been decided at the time the New York courts ruled on either Campanale's direct appeal or his collateral attack. Consequently, the state courts have not had the opportunity to decide whether *Doyle* should be applied retroactively in appellant's case and, if so, whether the cross-examination of Campanale was harmless error. The district judge acknowledged these facts, but nevertheless proceeded to the merits in the interest of not unduly burdening the appellant. However, subsequent Supreme Court case law clarifying the doctrine of exhaustion instructs that the district court judgment should be vacated and the matter remanded with a direction to dismiss for failure to exhaust state remedies.

---

**2.** In the petition filed with the district court Campanale raised several additional arguments as a basis for habeas relief. The district judge, however, rejected these arguments on the ground that they were meritless or because they had not been raised in the state courts. On appeal, Campanale does not contest the district court's disposition of those additional claims. Accordingly, we do not address them.

The Supreme Court's decision in *Duckworth v. Serrano,* 454 U.S. 1, 102 S.Ct. 18, 70 L.Ed.2d 1 (1981) (per curiam), does not warrant our sanctioning an additional exception to the exhaustion requirement, such as Judge Leval's "unduly burdensome" exception. In *Duckworth,* the Supreme Court stated that exhaustion can be waived only when "there is no opportunity to obtain redress in state court or if the corrective process is so clearly deficient as to render futile any effort to obtain relief." *Id.* at 3, 102 S.Ct. at 19. We find no basis for an unduly burdensome exception herein and, we believe that recognizing such an exception in this case would violate fundamental principles of comity. *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), which addressed the importance of adhering to the exhaustion doctrine, also persuades us that Campanale should present his *Doyle* claim to the state courts before we consider his state remedies exhausted. In *Rose v. Lundy,* the Court interpreted 28 U.S.C. §§ 2254(b) and (c), the exhaustion rule, to require that before a litigant brings a claim to federal court he must be sure that he has taken it first to state court. *Id.* at 520, 102 S.Ct. at 1204.

Campanale, however, does not rely on the district court's finding that return to state court would be unduly burdensome. Instead, he argues that his claim falls squarely within the traditional exceptions to the exhaustion requirement. He asserts that (1) his constitutional claim has already been presented to the state courts and (2) it would be futile to submit his claim to the state courts again since they have already considered and rejected it. In support of these arguments, appellant relies on this court's decision in *Hawkins v. West,* 706 F.2d 437 (2d Cir.1983).

In *Hawkins,* the habeas petitioner was convicted in 1975 of four counts of first degree robbery by the New York Supreme Court, Queens County, after a bench trial. On appeal to the Appellate Division, Second Department, Hawkins claimed that his guilt was not established beyond a reasonable doubt. At the time of Hawkins' state appeal, in order to prevail on a federal consti-

tutional claim that insufficient evidence was adduced at trial, a defendant, under *Thompson v. City of Louisville,* 362 U.S. 199, 204, 206, 80 S.Ct. 624, 628, 629, 4 L.Ed.2d 654 (1960), had to demonstrate that "no evidence" supported his conviction. The year after his state appeal was decided, the United States Supreme Court, in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), replaced the no evidence standard with the more liberal "beyond a reasonable doubt" test. Hawkins then renewed his insufficient evidence claim in a habeas petition in federal court. The district court dismissed the petition on the ground that Hawkins had failed to exhaust his state remedies.

On appeal, this court was called upon to determine whether Hawkins' insufficient evidence claim under *Jackson* had been fairly presented to the state courts. Even though *Jackson* was decided after the conclusion of the state court proceedings, this court held that Hawkins had satisfied the exhaustion requirement. In reaching this conclusion, the court relied upon two factors: "first, that *Jackson [v. Virginia]* emanated out of *[In Re] Winship,* [397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)] and, second, that the New York courts would not now apply a standard of review different from that which they applied when Hawkins first appealed." 706 F.2d at 440 (footnote omitted). Each of these factors will be discussed below.

First, in *Hawkins,* we found that the standard of review announced in *Jackson* "flowed" from the well-established constitutional right, announced in *In Re Winship,* 397 U.S. 358, 361–64, 90 S.Ct. 1068, 1070–73, 25 L.Ed.2d 368 (1970), that a defendant could not be convicted "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Hawkins,* 706 F.2d at 739. Because of this finding, even though *Jackson* was decided after the state proceedings were concluded, we rejected the State's argument that the state courts could not have been aware of the *Jackson* standard at the time they considered Hawkins'

claim. In the present case, Campanale contends that just as *Jackson* flowed from *Winship, Doyle* flowed from *Miranda.* He supports this assertion by pointing to a statement made by the Supreme Court that the holding in *Doyle* was compelled by *Miranda.* 426 U.S. at 617, 96 S.Ct. at 2244. Consequently, appellant argues that by raising *Miranda* in his state petition he has presented to the state courts essentially the same legal doctrine relied upon in his federal habeas petition. We are unpersuaded by this argument.

In *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court did not address the issue of impeachment by reference to post-arrest silence during cross-examination. As a result, prior to *Doyle* circuit courts were in conflict on this issue. *Compare Johnson v. Patterson,* 475 F.2d 1066, 1068 (10th Cir.) (Cross-examining defendant about his post-arrest silence for impeachment purposes is a violation of his Fifth Amendment right to remain silent.), *cert. denied,* 414 U.S. 878, 94 S.Ct. 64, 38 L.Ed.2d 124 (1973); *United States v. Semensohn,* 421 F.2d 1206, 1209 (2d Cir.1970) (same); *United States v. Brinson,* 411 F.2d 1057, 1060 (6th Cir.1969) (same) *and Fowle v. United States,* 410 F.2d 48, 51 (9th Cir.1969) (same) *with United States ex rel. Burt v. New Jersey,* 475 F.2d 234, 237–38 (3d Cir.) (Rosenn, J., concurring) (Cross-examining defendant about his post-arrest silence does not violate his right to remain silent), *cert. denied,* 414 U.S. 938, 94 S.Ct. 243, 38 L.Ed.2d 165 (1973) *and United States v. Ramirez,* 441 F.2d 950, 954 (5th Cir.) (same), *cert. denied,* 404 U.S. 869, 92 S.Ct. 91, 30 L.Ed.2d 113 (1971). The latter cases which held it was not a violation of *Miranda* to impeach a defendant by cross-examining him about his post-arrest silence, relied upon the Supreme Court decision in *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). In *Harris,* the Court held that a defendant's statements to police could be used to impeach his trial testimony even if they had been obtained in violation of *Miranda v. Arizona.* Chief Justice Burger, writing for the majority, stated that "[t]he shield provided by

*Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances." 401 U.S. at 226, 91 S.Ct. at 646. Although this language does not specifically state that a defendant could be impeached by cross-examination reference to his post-arrest *silence,* reliance on *Harris* for that proposition was not totally unjustified. Indeed, after *Harris* and before *Doyle,* this court regarded the issue as an open question. *See Rothschild v. New York,* 525 F.2d 686, 687 (2d Cir.1975) (per curiam); *United States v. Rose,* 500 F.2d 12, 17 (2d Cir.1974), *vacated,* 422 U.S. 1031–32, 95 S.Ct. 2648, 45 L.Ed.2d 688 (1975), *aff'd on remand,* 525 F.2d 1026 (2d Cir.1975), *cert. denied,* 424 U.S. 956, 96 S.Ct. 1432, 47 L.Ed.2d 362 (1976).

■ The conflict that existed among the circuits after *Miranda* and before *Doyle* undermines appellant's contention that *Doyle* "flowed" from *Miranda.* His contention is further undermined by the Supreme Court's own analysis of the issue presented and decided in *Doyle.* The *Doyle* Court stated: "We granted certiorari to decide whether impeachment use of a defendant's post-arrest silence violates any provision of the Constitution, a question left open last Term in *United States v. Hale,* 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975), and on which the Federal Courts of Appeals are in conflict." 426 U.S. at 616, 96 S.Ct. at 2243 (footnote and citation omitted). Thus, unlike *Jackson,* which merely stated a new standard of review, *Hawkins,* 706 F.2d at 439, *Doyle* enunciated a new constitutional rule. Accordingly, we find that *Doyle* did not so flow from *Miranda* as to render appellant's prior state and present federal claims identical. Campanale's prior state petitions did not raise the issue of applying *Doyle* retroactively by citing *Miranda.*

The second factor relied upon in *Hawkins* is also absent from the present case. In *Hawkins,* although the state proceedings were concluded prior to *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the state courts had applied a standard of review which was "functionally

identical" to the *Jackson* standard. 706 F.2d at 440. This fact led us to the conclusion "that the New York courts would not now apply [post-*Jackson*] a standard of review different from that which they applied when Hawkins first appealed." *Id.* (footnote omitted). We made it clear, however, "that if the New York court had operated under a 'no evidence' [old federal] rule prior to *Jackson,* the fact that *Jackson* was decided after Hawkins' appeal would argue strongly, perhaps conclusively, for resubmitting the reasonable doubt claim to state court on the theory that the new standard of review might produce a different result." *Id.* at 439.

In the case at bar, unlike in *Hawkins,* it cannot be said with any degree of certainty that New York case law was consistent with the holding in *Doyle* prior to the issuance of that decision and at all times relevant to this appeal. Long before Campanale's conviction, New York case law prohibited the use of a defendant's post-arrest silence as part of the State's *direct* case. *See People v. Bianculli,* 9 N.Y.2d 468, 174 N.E.2d 717, 215 N.Y.S.2d 33 (1961); *People v. Travato,* 309 N.Y. 382, 131 N.E.2d 557 (1955); *People v. Rutigliano,* 261 N.Y. 103, 184 N.E. 689 (1933). But, at the time of Campanale's conviction in 1969 and of his direct appeal in 1971, it is questionable whether New York law permitted the State to impeach a defendant by cross-examination reference to his post-arrest silence. Prior to 1971, the New York Court of Appeals had considered the issue in *People v. Petersen,* 4 N.Y.2d 992, 152 N.E.2d 532, 177 N.Y.S.2d 510 (1958) (per curiam) and *People v. Hyman,* 284 A.D. 347, 131 N.Y.S.2d 691 (1954), *aff'd mem.* 308 N.Y. 794, 125 N.E.2d 597 (1955). Although in both of these cases

the State Court of Appeals reversed convictions in cases in which the state attempted to impeach defendants by cross-examining them about their post-arrest silence, these cases can hardly be considered dispositive of the issue. The Appellate Division's opinion in *Hyman* and the Court of Appeals' opinion in *Petersen* both relied upon New York authorities that stood for the proposition that evidence of a defendant's post-arrest silence could not be used in the State's direct case. In addition, neither opinion gave any apparent consideration to the distinction between use on direct and use for impeachment. Further, in 1974, when the New York Court of Appeals did squarely address the issue of reference on cross-examination to a defendant's post-arrest silence, it approached it as a novel question and did not cite either *Petersen* or *Hyman*. *See People v. Rothschild,* 35 N.Y.2d 355, 320 N.E.2d 639, 361 N.Y.S.2d 901 (1974).

Moreover, in 1974, the State Court of Appeals, in *People v. Rothschild,* 35 N.Y.2d 355, 320 N.E.2d 639, 361 N.Y.S.2d 901 (1974), acknowledged the line of New York cases prohibiting the use of post-arrest silence on the State's direct case, but upheld the use of post-arrest silence for impeachment purposes. *Rothschild* was the law in New York in 1975, the year in which Campanale collaterally attacked his conviction.[3]

Our analysis of the relevant New York cases demonstrates that, at the very least, the instant case, unlike *Hawkins,* does not present a situation in which we can say with certainty that return to the state courts would be futile. Therefore, we conclude that appellant should return to state court on the theory that the rule of *Doyle v. Ohio* might produce a different result than was reached in the prior, pre-*Doyle* state

---

**3.** The holding in *Rothschild* was certainly not totally consistent with the rule subsequently announced in *Doyle.* Indeed, in *People v. Conyers,* 49 N.Y.2d 174, 400 N.E.2d 342, 424 N.Y.S.2d 402 *vacated and remanded sub nom., New York v. Conyers,* 449 U.S. 809, 101 S.Ct. 56, 66 L.Ed.2d 12 (1980), *judgment aff'd on remand, People v. Conyers,* 52 N.Y.2d 454, 420 N.E.2d 933, 438 N.Y.S.2d 741 (1981), the New York Court of Appeals cited *Doyle,* and stated: "we are impelled to re-examine our decision in

*Rothschild* in light of subsequent refinements in criminal law and practice." *Id.* at 179; 400 N.E.2d at 346, 424 N.Y.S. at 406. The court limited *Rothschild* by noting that the "circumstances surrounding that case were unusual since the [defendant police] officer was under a duty to inform his superiors of his undercover activities, and thus his continued silence in the face of accusation by his fellow officers was extraordinarily probative." *Id.* at 178; 400 N.E.2d at 345, 424 N.Y.S.2d at 405.

proceedings. *See Picard v. Connor,* 404 U.S. 270, 276, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971). Notably, the New York courts have applied *Doyle* on direct appeal to convictions entered prior to the *Doyle* decision. *See People v. Arce,* 42 N.Y.2d 179, 187–88, 366 N.E.2d 279, 283–84, 397 N.Y.S.2d 619, 624 (1977); *People v. Clark,* 74 A.D.2d 581, 581, 424 N.Y.S.2d 303, 303 (1980); *People v. Delesline,* 68 A.D.2d 815, 815, 414 N.Y.S.2d 138, 139 (1979); *People v. Riley,* 65 A.D.2d 608, 608, 409 N.Y.S.2d 432, 433 (1978); *People v. Quiles,* 59 A.D.2d 950, 951, 399 N.Y.S.2d 695, 696 (1977).

■ In conclusion, we note that requiring Campanale to present his *Doyle* claim to the state courts will further the important policy of comity which underlines the exhaustion requirement. The exhaustion doctrine "serves to minimize friction between our federal and state systems of justice by allowing the State an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights." *Duckworth v. Serrano,* 454 U.S. 1, 3, 102 S.Ct. 18, 19, 70 L.Ed.2d 1 (1981) (per curiam) (citations omitted). Although the potential for friction is present whenever a federal court considers a state prisoner's habeas petition, that potential is increased greatly in a case, like the instant one, in which the petitioner seeks retroactive application of a Supreme Court decision rendered after the state courts have considered his case. In such situations the state courts should have an opportunity to apply the law as changed before the petitioner's remedies are considered exhausted. *See, e.g., United States ex rel. Sloan v. McMann,* 415 F.2d 275, 276–77 (2d Cir.1969); *Subilosky v. Massachusetts,* 412 F.2d 691, 693 (1st Cir.1969); *Brown v. New Jersey,* 395 F.2d 917, 919–20 (3d Cir.1968) (per curiam); *Blair v. California,* 340 F.2d 741, 744 (9th Cir.1965); *cf. In re Whittington,* 391 U.S. 341, 344, 88 S.Ct. 1507, 1508, 20 L.Ed.2d 625 (1968) (per curiam). N.Y.Crim.Proc.Law § 440.10(1)(h) specifically provides a corrective process to redress constitutional claims which, like appellant's *Doyle* claim, could not have been raised on direct appeal. In our view, appellant should utilize this procedure and afford the state courts an opportunity to examine his constitutional claim in light of the *Doyle* decision.

Because we find that appellant has not exhausted his state remedies, we need not address the other contentions that he raises in this appeal.

## III. CONCLUSION

For all the foregoing reasons, we vacate the district court's judgment and we remand the cause to the district court with instructions to dismiss for failure to exhaust state remedies.