**Wilbur WEEKS (82–A–5861), Petitioner,**

**v.**

**Daniel SENKOWSKI, Superintendent of Clinton Correctional Facility, Respondent.**

**Nos. 97–CV–2380 (JBW), 03–MISC–0066 (JBW).**

United States District Court, E.D. New York.

July 23, 2003.

Jodi L. Mandel, The Office of the District Attorney, Kings County, Brooklyn, NY, for Respondent.

Wilburs Weeks, 82-A-5861, Auburn Correctional Facility, Pro Se.

## MEMORANDUM JUDGMENT & ORDER

WEINSTEIN, Senior District Judge.

The petition for a writ of habeas corpus is denied for the reasons stated orally on the record at a hearing before this court at which petitioner was present by telephone. This memorandum briefly addresses petitioner's claims.

### I. Facts and Procedural History

On the night of August 18, 1978, petitioner and four accomplices planned a burglary of an apartment located in the Sumner Housing Project in Brooklyn, New York. Upon breaking into the apartment, they found two children, seven-year-old Lashawn Kelly and her thirteen-year-old brother Gregory. Petitioner and his accomplices raped, sodomized, and smothered LaShawn. Then they dragged Gregory to an elevator-motor room on the roof of the building where they tortured, sodomized and hanged him. Both children died.

On February 4, 1985, following a jury trial, Petitioner was convicted of four counts of Murder in the Second Degree (New York Penal Law, section 125.25[1], [3]) and one count of Sodomy in the first Degree (New York Penal Law, section 130.50[1]). Petitioner was sentenced, as a second felony offender, to prison terms of twenty years to life on each of the four murder counts. Three of these terms were to run concurrently with each other but consecutively to the fourth term. Petitioner was sentenced to a term of eight to sixteen years on the sodomy count, to run concurrently with the prison terms on the murder counts.

On February 13, 1990, petitioner moved to vacate his judgment of conviction because trial counsel failed to present an alibi defense. On May 11, 1990, the motion was denied. Petitioner did not seek leave to appeal.

Petitioner appealed from his judgment of conviction to the Appellate Division, raising the following claims: (1) that the evidence against him was legally insufficient because the testimony of his accomplice was not corroborated by evidence tending to connect petitioner with the commission of the murders; (2) that the evidence of petitioner's pretrial statements should have been suppressed; and (3) that his sentence was excessive.

In his supplemental brief, petitioner presented the two claims raised in his original brief and added that: (1) his October 27, 1983 statement to the Assistant District Attorney ("A.D.A.") should have been suppressed because, in bringing Petitioner to the District Attorney's office, the A.D.A. exceeded the authority granted to him by the court order he had obtained; and (2) that the prosecutor deprived him of a fair trial by eliciting prejudicial testimony from several witnesses and by becoming an unsworn witness during summation. On October 15, 1991, the Appellate Division unanimously affirmed petitioner's judgment of conviction. On January 22, 1992, application for leave to appeal was denied.

Petitioner submits that his state court conviction should be reversed because (1) he was deprived of his constitutional right

to a fair trial when the trial court erroneously admitted his pretrial statements that were procured by the District Attorney's illegal and improper misuse of a court order; (2) he was deprived of his constitutional right to counsel and the right against self incrimination when statements were taken without counsel present; (3) he was denied his constitutional right to effective assistance of trial counsel because his attorney failed to investigate or call two alibi witnesses; (4) the evidence was not sufficient to permit any rational trier of fact to find him guilty beyond a reasonable doubt; and (5) prosecutorial misconduct deprived him of his due process right to a fair trial.

## II. AEDPA

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if it concludes that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

An "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." *Sellan v. Kuhlman,* 261 F.3d 303, 313 (2d Cir.2001) (quoting *Aycox v. Lytle,* 196 F.3d 1174, 1178 (10th Cir.1999)). Under the "contrary to" clause, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts."

*Williams v. Taylor,* 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (O'Connor, J., concurring and writing for the majority in this part). Under the "unreasonable application" clause, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413, 120 S.Ct. 1495. "[F]ederal law, as determined by the Supreme Court, may as much be a generalized standard that must be followed, as a bright-line rule designed to effectuate such a standard in a particular context." *Overton v. Newton,* 295 F.3d 270, 278 (2d Cir.2002). Determination of factual issues made by a state court "shall be presumed to be correct," and the applicant "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## III. Exhaustion

A state prisoner's federal habeas petition must be dismissed if the prisoner has not exhausted available state remedies as to any of his federal claims. *See Rose v. Lundy,* 455 U.S. 509, 522, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). "This exhaustion requirement is . . . grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." *Coleman v. Thompson,* 501 U.S. 722, 731, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). The exhaustion requirement requires the petitioner to have presented to the state court "both the factual and legal premises of the claim he asserts in federal court." *Daye v. Attorney General,* 696 F.2d 186, 191 (2d Cir.1982) (en banc).

A district court may, in its discretion, *deny* on the merits habeas petitions con-

taining unexhausted claims—so-called "mixed petitions." *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state."). In addition, the state may waive the exhaustion requirement, but a "State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement." *Id.* § 2254(b)(3); *see also Ramos v. Keane*, No. 98 CIV. 1604, 2000 WL 12142, at *2, 2000 U.S. Dist. LEXIS 101, at *10 (S.D.N.Y.2000) (state's failure to raise exhaustion requirement" does not waive the issue).

## IV. Procedural Bar

■ A federal habeas court may not review a state prisoner's federal claims if those claims were defaulted in state court pursuant to an independent and adequate state procedural rule, "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750, 111 S.Ct. 2546.

■ If a state court holding contains a plain statement that a claim is procedurally barred then the federal habeas court may not review it, even if the state court also rejected the claim on the merits in the alternative. *See Harris v. Reed*, 489 U.S. 255, 264 n. 10, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) ("a state court need not fear reaching the merits of a federal claim in an *alternative* holding" so long as it explicitly invokes a state procedural rule as a separate basis for its decision).

## V. Actual Innocence

■ "[A] habeas petitioner may also bypass the independent and adequate state ground bar by demonstrating a constitutional violation that resulted in a fundamental miscarriage of justice, *i.e.,* that he is actually innocent of the crime for which he has been convicted." *Dunham v. Travis*, 313 F.3d 724, 729 (2d Cir.2002).

■ Because habeas corpus "is, at its core, an equitable remedy," *Schlup v. Delo*, 513 U.S. 298, 319, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995), the Supreme Court has stated that "in appropriate cases, the principles of comity and finality that inform the concepts of cause and prejudice must yield to the imperative of correcting a fundamentally unjust incarceration," *id.* at 320–21, 115 S.Ct. 851 (quotations omitted). To ensure that this exception remains rare and will be applied only the extraordinary case, the Court has "explicitly tied" the miscarriage of justice exception to the petitioner's innocence. *Id.* at 321, 115 S.Ct. 851. "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence ... that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." *Id.* at 324, 115 S.Ct. 851.

■ A showing of actual innocence serves merely as a gateway to the airing of the petitioner's defaulted claim and is not itself cognizable in habeas as a free-standing claim. *See Herrera v. Collins*, 506 U.S. 390, 400, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993) ("[C]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."). A habeas court is, in short, concerned " 'not [with] the petitioners' in-

nocence or guilt but solely [with] the question whether their constitutional rights have been preserved.'" *Id.* (quoting *Moore v. Dempsey,* 261 U.S. 86, 87–88, 43 S.Ct. 265, 67 L.Ed. 543 (1923)); *cf. Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (habeas court may review an *independent constitutional claim* that the evidence adduced at trial was insufficient to convict a criminal defendant beyond a reasonable doubt); *Thompson v. Louisville,* 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960) (reversing conviction of "Shuffling Sam" *on direct review* from conviction in Louisville's police court where there was no evidence that defendant violated city ordinances).

## VI. Ineffective Assistance of Counsel

The Counsel Clause of the Sixth Amendment provides that a criminal defendant "shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This right to counsel is "the right to *effective* assistance of counsel." *McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970) (emphasis added). The Supreme Court has explained that in giving meaning to this requirement we must be guided by its purpose—"to ensure a fair trial"—and that therefore the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to prevail on a Sixth Amendment claim, a petitioner must prove both that counsel's representation "fell below an objective standard of reasonableness" measured under "prevailing professional norms," *id.* at 688, 104 S.Ct. 2052, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694, 104 S.Ct. 2052. *See also United States v. Eyman,* 313 F.3d 741, 743 (2d Cir.2002). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

The performance and prejudice prongs of *Strickland* may be addressed in either order, and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." *Id.* at 697, 104 S.Ct. 2052. In evaluating the prejudice suffered by a petitioner as a result of counsel's deficient performance, the court looks to the "cumulative weight of error" in order to determine whether the prejudice "reache[s] the constitutional threshold." *Lindstadt v. Keane,* 239 F.3d 191, 202 (2d Cir.2001). The court must also keep in mind that "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland,* 466 U.S. at 696, 104 S.Ct. 2052. "The result of a [criminal] proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Purdy v. Zeldes,* 337 F.3d 253, 260 (2d Cir.2003) (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052). Ineffective assistance may be demonstrated where counsel performs competently in some respects but not in others. *See Eze v. Senkowski,* 321 F.3d 110, 112 (2d Cir.2003).

There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052.

As a general matter, strategic choices made by counsel after a thorough investigation of the facts and law are "vir-

tually unchallengeable," though strategic choices "made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland,* 466 U.S. at 690–91, 104 S.Ct. 2052. Counsel, in other words, "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* at 691, 104 S.Ct. 2052. Where counsel fails to make a reasonable investigation that is reasonably necessary to the defense, a court must conclude that the decision not to call an expert cannot have been based on strategic considerations and will thus be subject to review under *Strickland's* prejudice prong. *See Pavel v. Hollins,* 261 F.3d 210, 223 (2d Cir.2001) (counsel ineffective in a child sexual abuse case where his failure to call a medical expert was based on an insufficient investigation); *Lindstadt,* 239 F.3d at 201 (same). The court of appeals for the Second Circuit has recently gone so far as to imply that all of counsel's significant trial decisions must be justified by a sound strategy—a significant raising of the bar that would appear to require an unrealistic degree of perfection in counsel. *See Eze,* 321 F.3d at 136 (remanding to district court for factual hearing because it was "unable to assess with confidence whether strategic considerations accounted for ... counsel's decisions").

## VII. Prosecutorial Misconduct

 Ordinarily, a prosecutor's misconduct will require reversal of a state court conviction only where the remark sufficiently infected the trial so as to make it fundamentally unfair, and, therefore, a denial of due process. *Donnelly v. DeChristoforo,* 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). Nonetheless, "when the impropriety complained of effectively deprived the defendant of a specific constitutional right, a habeas . claim

may be established without requiring proof that the entire trial was thereby rendered fundamentally unfair." *Mahorney v. Wallman,* 917 F.2d 469, 472 (10th Cir. 1990) (citing *DeChristoforo,* 416 U.S. at 643, 94 S.Ct. 1868). Inquiry into the fundamental fairness of a trial requires an examination of the effect of any misconduct within the context of the entire proceedings. *DeChristoforo,* 416 U.S. at 643, 94 S.Ct. 1868. In order to view any prosecutorial misconduct in context, "we look first at the strength of the evidence against the defendant and decide whether the prosecutor's statements plausibly could have tipped the scales in favor of the prosecution.... Ultimately, we must consider the probable effect the prosecutor's [statements] would have on the jury's ability to judge the evidence fairly." *Fero v. Kerby,* 39 F.3d 1462, 1474 (10th Cir.1994) (quotations omitted).

## VIII. Certificate of Appealability

This opinion complies with *Miranda v. Bennett,* 322 F.3d 171, 175–77 (2d Cir. 2003), and Rule 52 of the Federal Rules of Civil Procedure. No other issue open to consideration by this court has merit. *See Sumner v. Mata,* 449 U.S. 539, 548, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981) ("a court need not elaborate or give reasons for rejecting claims which it regards as frivolous or totally without merit").

 A certificate of appealability may be granted with respect to any one of petitioner's claims only if petitioner can make a substantial showing of the denial of a constitutional right. Petitioner has a right to seek a certificate of appealability from the Court of Appeals for the Second Circuit. *See* 28 U.S.C. § 2253; *Miller–El v. Cockrell,* 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). Any claims for which a certificate of appealability is

granted will be reviewed *de novo* by the Court of Appeals.

## IX. Claims

Petitioner claims that he was deprived of his constitutional right to a fair trial when the trial court erroneously admitted pretrial statements that were procured by the District Attorney's "illegal and improper misuse of a court order." He claims that he was deprived of his constitutional right to counsel and the right against self incrimination when statements were taken without counsel present.

 First, petitioner asserts that he was "interrogated and threaten[ed] by the assistant district attorney with imprisonment if he did not cooperate." Respondent contends that this claim is procedurally barred. Whether barred or not, the claim is meritless. A *Huntley* hearing was held after defense counsel moved to suppress the statements. The motion was denied. With respect to the January 27, 1982 statement to the district attorney, the trial court found that petitioner voluntarily went to the district attorney's office and later the police precinct house. Petitioner never asked for an attorney and was never restrained. After giving his statements he was not arrested and in fact went home. In addition, it was reasonable for the court to find that his statement—"I didn't have anything to do with [the murders]. I have no more to say to you about it. I [had] no more participation in it."—was not, as petitioner claims, an invocation of his right to remain silent.

 Second, with respect to the October 27, 1983 statement, petitioner claims that it was inadmissible because the police violated New York's right to counsel rule, by which a defendant or suspect may not waive his right to counsel at an interrogation if he is being represented by counsel in another, open matter. *See People v. Bartolomeo,* 53 N.Y.2d 225, 440 N.Y.S.2d 894, 423 N.E.2d 371 (1981). Petitioner notes that there was a seven-year-old unrelated case that remained open at the time of this interview because, for some reason, sentencing in the matter had never occurred. Counsel's relationship to petitioner was not a continuing one; here it was remote to the vanishing point. Even if this claim could be recognized by this court on habeas review, it would be meritless. As the Appellate Division noted in denying this claim on direct appeal, the rule of *Bartolomeo* was overruled by the New York Court of Appeals prior to petitioner's conviction becoming final. Habeas relief is thus not warranted on this ground.

 Third, petitioner claims that the district attorney lacked authority to bring him to the district attorney's office from his prison cell. The claim is procedurally barred because it was not raised in his letter to the New York Court of Appeals seeking leave to appeal. At any rate, it is also meritless. There is no constitutional or federal law that petitioner alleges was violated, and habeas relief is therefore unavailable with respect to this claim. It was appropriate to bring petitioner to a convenient place for an interview rather than to force the interviewer to go to the jail.

 Petitioner next claims that he was denied his constitutional right to effective assistance of trial counsel because his attorney failed to investigate or call two alibi witnesses. This claim is unexhausted because, although it was raised in petitioner's motion to vacate judgment and denied, petitioner did not appeal that denial. Petitioner would be time-barred from now appealing the denial, meaning that he is statutorily barred from raising the claim in state court. Ordinarily, this court would treat a claim in this posture as exhausted but procedurally barred, and address it

accordingly. *See Bossett v. Senkowski,* 41 F.3d 825, 828–29 (2d Cir.1994) (because it would be "fruitless" to require petitioners to return to state court to raise unexhausted claims that are procedurally barred, such claims are deemed exhausted). The exception to this general rule applies in circumstances like that presented here, where a motion to vacate judgment has not been appealed and the time for doing so in state court has expired. The Court of Appeals for the Second Circuit has explicitly held that, in such circumstances, "[w]hile that statutory limit may ultimately be held by state courts to preclude them from reaching the merits of [an] ineffective assistance claim, [petitioner] must still present that claim to the highest state court," because "[w]e have no authority to declare as a matter of state law that an appeal from the denial of [an] original Section 440.10 motion is unavailable or that he cannot raise the ineffective assistance claim in a new Section 440.10 motion." *Pesina v. Johnson,* 913 F.2d 53, 54 (2d Cir.1990). Although the *Pesina* rule clearly cuts against the grain of *Bossett* and mandates fruitless, time-consuming and expensive litigation, the case has never been explicitly overruled. *See Priester v. Senkowski,* No. 01–CIV–3441, 2002 WL 1448303, 2002 U.S. Dist. LEXIS 11981 (S.D.N.Y. July 3, 2002) (following *Pesina* rather than *Bossett* ). In light of *Bossett,* this court will not follow *Pesina.* Petitioner's claim is rejected on the ground that it is procedurally barred. The Second Circuit rule in *Pesina* should be explicitly reconsidered.

In any event it is plain that the ineffective assistance claim is without merit. Petitioner states that he supplied his defense counsel with the names of seven alibi witnesses but that counsel refused altogether to investigate or interview the witnesses. He failed, however, to append affidavits from six of these seven potential alibi witnesses, as required by New York procedure. According to petitioner, these wit-

nesses could testify that petitioner was drinking and socializing with them for nearly twelve straight hours, from 11:00 a.m. until 11:30 p.m. on the day of the murder. One of the alibi witnesses, Robert Brodie, supports petitioner's contention in an affidavit.

■ Even with the Brodie affidavit, there can be little doubt that trial counsel's refusal to investigate the potential for an alibi defense—if, indeed, he refused to do so—was a sound strategic choice. Among the seven alibi witnesses petitioner lists, three were convicted of having participated in the same murders for which petitioner was being tried. One had already been convicted, one was on trial with petitioner, and one was dead. Trial counsel was not ineffective for failing to pursue a trial strategy in which petitioner defense would be that he was with the other murderers drinking in a different location; to do so would require petitioner to, in essence, disprove the state's ironclad case against the other defendants. Instead, counsel reasonably channeled his efforts toward suggesting to the jury that petitioner was not at the crime scene where his codefendant and the other defendants were committing this heinous crime. In addition, petitioner's failure to provide affidavits from the other three potential alibi witnesses suggests that their testimony would differ from petitioner's claims.

■ Petitioner next claims that the evidence was not sufficient to permit any rational trier of fact to find him guilty beyond a reasonable doubt. This claim appears to be procedurally barred because it was not raised in petitioner's letter seeking leave to appeal to the New York Court of Appeals. At any rate, it is without merit. The relevant question for this court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could

have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Petitioner "bears a very heavy burden" when challenging the legal sufficiency of the evidence in a state criminal conviction. *Einaugler v. Supreme Court,* 109 F.3d 836, 840 (2d Cir.1997). There was sufficient evidence to sustain the verdict. An accomplice testified that petitioner was present at the planning stages, that he entered the victims' apartment, and that he aided the other defendants as they killed and sodomized the child victims. In addition, petitioner acknowledged in statements to police that he was present at the planning sessions for the robbery of the apartment and that he was present at the apartment at the time of the murders. These statements are adequate corroboration of the accomplice testimony.

██ Finally, petitioner claims that prosecutorial misconduct deprived him of his due process right to a fair trial. Specifically, petitioner complains that the prosecutor (1) elicited testimony that petitioner had committed crimes as a three-card monte player; (2) sought to introduce inadmissible hearsay; (3) elicited testimony that petitioner had taken two polygraph tests; and (4) improperly suggested during summation that fingerprints found at the crime scene were too smudged for useful comparison when no such evidence was admitted at trial. Respondent claims that these claims were procedurally defaulted, but the Appellate Division merely held that they were either unpreserved for appellate review or do not warrant reversal. That is not a plain statement of a procedural bar and the claim is thus preserved for federal review. Nonetheless, the claim is barred for another reason. Petitioner did not appeal the decision of the Appellate Division on this ground in his letter seeking leave to appeal to the New York Court of Appeals.

██ At any rate, the claim is without merit. Petitioner cannot show that he was denied due process or a fundamentally fair trial based on the prosecution's putative attempt to improperly enter into evidence the above-listed testimony. First, evidence concerning the card game was sought in order to show that petitioner's time at the precinct house being interrogated was not coercive; the testimony was that petitioner taught the detectives to play chess and three card monte. Second, when the prosecutor queried a detective about hearsay, a defense objection was sustained by the court, thereby precluding any chance of prejudice to the defendant. Third, testimony about the polygraph was elicited initially by defense counsel. Fourth, the prosecutor's alleged "unsworn testimony" during his summation was a fair comment on the fingerprint evidence and was not "egregious misconduct" amounting to a denial of due process. *See Sales v. Harris,* 675 F.2d 532, 541 (2d Cir.1982).

Even under a *de novo* standard of review, none of petitioner's claims merit the granting of the writ.

X. Conclusion

The petition for a writ of habeas corpus is denied. A certificate of appealability is granted with respect to petitioner's claim that he was denied his constitutional right to effective assistance of trial counsel because his attorney failed to investigate or call two alibi witnesses. The Court of Appeals may wish to reconsider *Pesina* in this connection.

A certificate of appealability is not granted with respect to any of petitioner's remaining claims, petitioner having made no substantial showing of the denial of a constitutional right. Petitioner has a right to seek a further certificate of appealability from the Court of Appeals for the Sec-

ond Circuit. *See* 28 U.S.C. § 2253; *Miller–El v. Cockrell*, 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

SO ORDERED.